**NORTHERN STATES POWER
COMPANY, Respondent,**

v.

**Leslie G. WILLIAMS, et al.,
Respondents-Below,**

**Go-Pher Evergreen, a partnership,
Appellant.**

No. C7–82–1652.

Supreme Court of Minnesota.

Jan. 20, 1984.

Dorsey & Whitney, Wm. J. Hempel, Dennis Buratti, Kenneth T. Tyra, Minneapolis, for appellant.

Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Raymond A. Haik, Ralph S. Towler, Minneapolis, for respondent.

**AMDAHL, Chief Justice.**

This is an appeal from an order granted by the Sherburne County District Court on a motion arising out of a condemnation proceeding. Northern States Power Company (hereinafter NSP) originally petitioned the district court on February 24, 1982, pursuant to Minn.Stat. § 117.042 (1982), to condemn a utility easement to construct a high-voltage power line over private property in Sherburne County which included two parcels (identified as 10A and 12A) in Clear Lake, owned by the appellant. On April 14, 1982, appellant, Go-Pher Evergreen, notified NSP of its election, pursuant to Minn.Stat. § 116C.63, subd. 4 (1982), to require NSP to condemn a fee interest in the entire two parcels.

On May 14, 1982, the district court ordered the transfer of title and possession of the easements to NSP as of May 27, 1982, on the condition that NSP pay the appraised value of the easements as required by Minn.Stat. § 117.042 (1982). Five Commissioners were appointed on May 17, 1982, to ascertain the amount of damages to be sustained upon NSP's taking of the easements and construction and maintenance of the transmission system. NSP paid the appraised value for the easements on May 26, 1982. On June 18, 1982, one of the partners of Go-Pher Evergreen sold his homestead which was located on Parcel 12B to NSP.

NSP moved the district court on June 25, 1982, for an order of approval of NSP's instructions to the Commissioners directing the appraisal of the fee simple interest in the parcels of land.

On October 15, 1982, however, NSP changed its position and filed a motion for an order determining that it not be required to take a fee interest in parcels 10A and 12A and continuing hearings before the Commissioners on the issue of damages from the taking of the easements. A hearing on the motion was held on October 22, 1982. The district court granted NSP's motion in an order of November 8, 1982. The deadline for the filing of the Commissioners' report has been extended pending disposition of this appeal. We decide today that Christmas tree production fits the definition of "timber" as consistently applied by the Minnesota Legislature. We also hold that Go-Pher's exclusive use of its land is for timber production which fits under an exclusion to Minn.Stat. § 116C.63, subd. 4 (1982). The election of a fee-taking is therefore not available to appellants. We affirm the decision of the Sherburne County District Court.

Go-Pher Evergreen is a family partnership engaged in growing and harvesting Christmas trees and, it is claimed, nursery stock on parcels 10A and 12A. The facts with regard to the nature of Go-Pher's use

of its property are in dispute. According to affidavits filed by the owners, parcel 10A consists of approximately 155 acres, 40 of which are tillable with 20 acres devoted to growing and harvesting Christmas trees and 5 acres devoted to nursery stock. Parcel 12A consists of approximately 237.5 acres, of which 196 are tillable and 4 are occupied by buildings and roads. Christmas trees are grown on 146 acres of parcel 12A and nursery stock on 50 acres. Though the proportion of land devoted to Christmas trees is much greater than that on which nursery stock is grown, the number of trees produced in each category is equivalent according to Go-Pher; approximately 124,000 Christmas trees and 126,000 nursery stock trees.

NSP claims that at the October 22, 1982, hearing the parties' attorneys extensively discussed the actual use of these parcels; "the point was forcefully made * * * that the acreage in question is in fact still being used for the purpose of growing Christmas trees. The only distinction between these acres and the remainder of the parcels is that they contain young experimental trees, planted at varying intervals which to date have not been marketed either for nursery stock or for any other purpose." NSP claims that Go-Pher's attorney admitted that these young trees could be used as Christmas trees but that their use had not actually been determined.

A transcript of this hearing was not made. The trial judge did not make any more specific findings as to the use of these parcels except to find that "[I]t appears to the Court that Parcel Nos. 10A & 12A are rural lands used for the purpose of growing Christmas trees." Both parcels, however, have been classified by the Sherburne County Assessor, pursuant to Minn. Stat. § 273.13 for real estate tax purposes, in part as agricultural (a Class 3 category) and in part as agricultural-homestead (under category Class 3b).

In opposition to this classification, Carl E. Vogt, an independent consulting forester, inspected the property and testified by affidavit that Parcels 10A and 12A "should properly be classified as Class 3e for purposes of real estate taxation pursuant to Minnesota Statutes § 273.12." Robert J. Dolan, a certified property tax assessor employed by NSP, testified by affidavit that "land used for the growing of Christmas trees in Morrison and Itasca Counties is classified as Class 3e land" and that in his opinion this is the proper classification.

Accordingly, the district court determined that NSP was not required to take a fee interest in the subject property because parcels which are "rural lands used for the purpose of growing Christmas trees," are classified as class 3e. Under Minn.Stat. § 273.13, subd. 8a (1982), class 3e is comprised of land used for the following purposes: "Real estate, rural in character, and used *exclusively* for the purpose of growing trees for *timber*, lumber, wood and wood products * * *." (Emphasis added). Owners of land which is defined as class 3e are not eligible to elect a fee-taking under Minn.Stat. § 116C.63, subd. 4 (1982), which provides:

> When private real property defined as class 3, 3b, 3c, 3cc, 3d or 3f pursuant to section 273.13 is proposed to be acquired for the construction of a site or route by eminent domain proceedings, the fee owner * * * shall have the option to require the utility to condemn a fee interest in any amount of the contiguous, commercially viable land * * *. Commercial viability shall be determined without regard to the presence of the utility route or site * * * provided that a utility shall divest itself completely of all such lands used for farming or capable of being used for farming * * *.[1]

The easement which passes through parcels 10A and 12A consists of 12.69 acres. NSP paid Go-Pher $1,785 for parcel 10A and $9,000 for parcel 12A. The appraisals for a fee simple interest in the property range from $690,000 to $1,700,000.

---

**1.** The constitutionality of this statute was recently upheld in *Cooperative Power Ass'n v.* *Aasand,* 288 N.W.2d 697 (Minn.1980), which is discussed *infra.*

Go-Pher claims to have been repeatedly assured by NSP over an 8-month period that a fee interest in the two parcels of land would be taken. Apparently in reliance on these assurances, the owners of the family homestead located on Parcel 12B sold the homestead to NSP.

A letter (undated but presumably written at the beginning of July 1982) from Ralph S. Towler, attorney for NSP, giving Go-Pher permission to harvest a certain number of Christmas trees supports the inference that at that time NSP intended to acquire a fee interest in the property. In reaction to the Peterson's claim of detrimental reliance, NSP has offered to return the residential parcel 12B to its owners "in exchange for NSP's costs of acquiring it."

■ The scope of review ordinarily applicable to these types of actions is set forth by Minn.R.Civ.P. 52.01 which provides that "[i]n all actions tried upon the facts without a jury * ⁺ *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." But this court in *In Re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 243 N.W.2d 302, *cert. denied sub nom., Arms v. Watson*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976), expanded the scope of review in some cases: "Where as in this case, the critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility of that evidence." 308 Minn. at 225, 243 N.W. at 305. Thus, where a trial judge decides a fact issue on the basis of affidavits alone, the supreme court may disregard the finding of the trial judge and review the documentary evidence de novo. In this case, the trial judge may very well have been influenced by arguments of counsel at the hearing on NSP's motion but arguments of counsel are not those of witnesses presenting contested facts and whose credibility must be determined by the trial judge. Hence, this court "need not defer to the trial court's assessments of the evidence and may substitute factual findings of our own * * *." *Snyder Electric Co. v. Fleming*, 305 N.W.2d 863, 868 (Minn.1981).

■ Appellant protests that NSP's motion for an order that it not be required to take a fee interest was not timely in that it was made 6 months after Go-Pher's election to require a fee-taking. The legislature has not specified a period of time within which a utility must contest such an election. The district court found and we agree that NSP's motion was timely and proper because it was filed before the submittal of valuation testimony and before the filing of any award by the court-appointed commissioners.

Owners of private real property that is defined as class 3e are ineligible to elect a fee-taking by NSP upon the condemnation of a high voltage utility easement under Minn.Stat. § 116C.63, subd. 4 (1982). The contention of appellant is that to fit under a 3e definition Christmas trees must constitute the growing of trees for "timber" and the growth of Christmas trees must be the "sole" use of the land. Appellant claims to be growing "nursery stock" as well as Christmas trees and that neither are "timber" and therefore the county assessor's classification of the property as 3 and 3b must stand. Since under Minn.Stat. § 273.-13, subd. 6 (1982), Class 3b covers agricultural use which "may include pasture, *timber*, waste, unusable wild land * * * *" denominating appellant's use of the land as for the production of "timber" is not determinative, but it is a necessary beginning.

The term "timber" is not specifically defined under § 273.13, but there are several definitions of "timber" in other applicable statutes. Section 631(a) of the Internal Revenue Code of 1954, for example, which provides capital gains treatment for the sale of timber defines "timber" as including "evergreen trees which are more than six years old at the time severed from the roots and are sold for ornamental purposes." Since Christmas trees that are ready for harvest are usually more than 6 years old, they are "timber" under this definition.

Other definitions are even more broad. Minn.Stat. § 88.01 (1982) defines the important terms under the Forestry Act: " 'Timber' means and includes trees, saplings, bushes, seedlings and sprouts from which trees may grow, of every size, nature, kind and description." The same Act defines decorative trees as "growing pines, spruce, balsam, cedar, evergreen or coniferous trees, bushes * * * intended to be sold or used for decorative purpose. Nursery stock shall not be included in this definition." Minn.Stat. § 88.641, subd. 2 (1982). Then, under Chapter 89 on State Forests, "timber" is defined as trees that will produce forest products of value * * * including but not limited to logs * * * and decorative material." Minn.Stat. § 89.001, subd. 5 (1982). The identical definition of "timber" is used in Chapter 90 on Timber Lands. See Minn.Stat. § 90.01, subd. 6 (1982).

The inevitable conclusion in looking at these statutory definitions is that Christmas trees fall within the broad category of "timber" and also within the sub-category of "decorative trees." Nursery stock also falls within the broad category of "timber" but not within the sub-category of "decorative trees," at least under Minn.Stat. § 88.-641 to 88.649 which is an Act "revising, consolidating, codifying the laws relating to decorative trees and their cutting and transportation." Historical Note, Minn. Stat.Anno. § 88.641 (1977).

Appellant argues that denominating Christmas trees as "timber" perverts the common usage of that term because such trees are not held to maturity as are trees grown for use in wood products. Appellant cites the Georgia court's definition of "timber" as "green wood of twenty or more years in age." *Marshall v. Georgia Power Co.,* 134 Ga.App. 479, 480, 214 S.E.2d 728, 730 (1975). But appellant also argues that growing Christmas trees is a use analogous to "growing crops" and therefore should fall under the 3b "agricultural use" classification. Under Georgia case law "the word 'crops' includes and embraces the fruits and products of all plants, trees, shrubs but not the tree or shrub

itself" and therefore the *Marshall* court also held that Christmas trees are not "growing crops." *Id.* To follow that line of reasoning would be to leave appellant's use of his land without a classification under both § 273.13 and § 116C.63, subd. 4. This court will not reach such a strained result. The legislature in its adoption of the Forestry Act (Ch. 88) has shown it can treat Christmas trees as *sui generis* when it chooses to do so. An overall look at the statutory scheme in Minnesota with regard to "timber" reveals that Christmas tree growing falls within its definition.

■ The recent case of *Greenhalge v. Town of Dunbarton,* 122 N.H. 1038, 453 A.2d 1295 (1982), did hold that Christmas trees were not timber but were a use analogous to the growing of a crop. But the New Hampshire statutes had not defined "growing wood and timber" and the court was there deciding whether or not Christmas trees fit within an exemption from a yield tax and were subject to the property tax instead. This situation is not relevant to the issue in Minnesota where "timber" is defined to include "decorative purposes" and where the systematic cutting of immature Christmas trees is clearly subject to the property tax under § 273.13. We therefore hold that both Christmas trees and nursery stock constitute "timber" under § 273.13, subd. 6, and subd. 8a. Since "timber" falls within both the 3b and 3e classifications the only logical means of choosing between the two categories is the word "exclusively."

The Minnesota Attorney General has repeatedly taken the position "that Christmas trees constitute timber, and that the growing of coniferous trees for use as Christmas trees constitutes a forestry activity as opposed to an agricultural activity. Opinions of Attorney General, September 14, 1939, 27a; November 22, 1950, 27a." Op. Atty.Gen., 474, at 2, January 13, 1956.

But the same opinion states further that land devoted exclusively to the growing of Christmas trees comes within the 3e classification and that land devoted exclusively

to the growing of nursery stock does not. According to that opinion realty that is "substantially used" or "primarily used" for the purpose of growing trees for timber is not entitled to the more favorable 3e classification since it must be used "exclusively" for that purpose. Thus, "[a]n assessor may apply classification 3e * * * to a portion of the realty used exclusively for timber * * * and the remainder of the realty within the same legal description may be given a different classification." Op.Atty. Gen., 474, at 3, April 9, 1957.

While the opinion of the attorney general is entitled to great weight, it is not determinative on its own. The attorney general's written opinions, under Minn. Stat. § 270.09, have the force and effect of law until overruled by a court of competent jurisdiction. In view of the consistency with which the Minnesota legislative scheme approaches the definition of "timber" in a broad manner, we reject a portion of the attorney general's opinion of 1956 (Op.Atty.Gen., 474, Jan. 13, 1956) and hold that the exclusive growing of both Christmas trees *and* nursery stock on appellant's parcels of land falls under the 3e classification as "rural real estate used *exclusively* for the purpose of growing trees for timber * * *." Minn.Stat. § 273.13, subd. 8a.[2]

This court described the purposes of § 273.13 in *Summit House Apartment Co. v. County of Hennepin,* 312 Minn. 358, 253 N.W.2d 127 (1977), as dealing exclusively with classification for the purpose of assessing property subject to taxation. Classification is primarily the responsibility of the assessor "subject to sequential review by local, county and state boards of review or equalization, and by the commissioner of revenue." 312 Minn. at 361, 253 N.W.2d at

128–29. This statutory review process which is set forth in Minn.Stat.Ch. 274 on Assessments; Review, Correction, and Equalization makes it clear that the classification by a county assessor is not binding on this court. Various opinions of the attorney general have so stated:

1. County Board of Equalization has authority to reclassify property from rural to urban where assessor has made a mistake and where facts appear to show that property in question is without doubt urban property. Op.Atty.Gen., 474–C, Aug. 2, 1948.

2. The assessor makes first classification of property * * * and his action is subject to review by board of review * * * then presented to respective county auditors, corrected by them, equalized by county boards of equalization and corrected and equalized by the State Tax Commission, each of which in proper cases may change classification of real property therein included * * *. Op.Atty. Gen., 796, Feb. 10, 1934.

3. The assessment policy of including outboard motors as "class two" property * * * should be continued until the legislature chooses to act or until a court of competent jurisdiction has clearly indicated that the assessing officials' determinations have been erroneous. Op.Atty.Gen., 421a–4, March 25, 1960.

The above-quoted opinions and the review procedures established by the assessment statutes all support the general legislative goals of uniformity and equality in the assessment of real property for tax purposes. *Dulton Realty, Inc. v. State,*

---

2. The addition of "seedlings" to the definition of timber in Section 88.01, subd. 5, indicates the broad interpretation of the term that is applied for purposes of Minnesota timber and forestry laws. Since we accept the above-quoted broad definitions of the term "timber" for the purposes of § 273.13, subds. 6, 8a, "nursery stock" also falls within the definition. Moreover, respondent NSP has alleged that the trees Go-Pher is cultivating as "nursery stock" are the same types of trees as are cultivated for use as Christmas trees. To hold that because portions of the land are devoted to "nursery stock" Go-Pher's use of the land is not *exclusively* for timber production and therefore belongs in Class 3b would create equal protection problems. There does not seem to be a rational basis for distinguishing the grower of *only* Christmas trees from the grower of Christmas trees plus nursery stock for purposes of a fee election under Minn.Stat. § 116C.63, subd. 4.

270 Minn. 1, 132 N.W.2d 394 (1964). The affidavit of Robert J. Dolan, the Manager of Property Taxes for NSP, states that "based on my personal knowledge, land used for the growing of Christmas trees in Morrison and Itasca Counties is classified as Class 3e land."[3] In the interest of uniformity and consistency with the general legislative scheme with regard to forestry, we find that the Sherburne County Assessor erred in classifying appellant's use of parcels 10A and 12A as class 3b. As properly classified 3e property, appellant is not eligible for the election of a fee-taking under Minn.Stat. § 116C.63, subd. 4.

Such a holding is consistent with the concerns we expressed in *Cooperative Power Ass'n v. Aasand*, 288 N.W.2d 697 (Minn.1980), which is the only case so far to have dealt with Minn.Stat. § 116C.63, subd. 4. The *Aasand* case upheld the constitutionality of that section as a "creative legislative response to a conflict between rural landowners and utilities concerning HVTL [high-voltage transmission lines] right-of-ways." *Id.* at 699–700. This court stated that the legislature has the ability to constrain the power of condemnation but that it "may not impose unreasonable restraints rendering the exercise of the delegated power unduly burdensome and fundamentally unfair." Id. at 700. The concern of the court at that time was that § 116C.63, subd. 4, as written:

> [I]s subject to a construction that could produce bizarre and unjustifiable results; landowners could compel commercially unreasonable acquisitions which, in light of the purpose of the statute, would impose an undue burden on utilities.

*Id.* at 701.

In this case there is no question that parcels 10A and 12A are "commercially viable." However, to require NSP to accept the "shifting of the transaction cost of locating a willing purchaser for the burdened property from landowner to utility"[4]

when a total of 387.5 acres worth from $690,000 to $1,700,000 would have to be acquired as a result of the condemnation of an easement of 12.69 acres would not meet the test of reasonableness established in *Aasand*.

Appellant forcefully argues that the legislative history behind the passage of Minn. Stat. § 116C.63, subd. 4, indicates that the intent of the statute would be subverted by a refusal to allow Christmas tree farmers to elect a fee-taking. In *Aasand* this court described the public purpose of the statute as being to afford "landowners not wishing to be adjacent to such right-of-ways the opportunity to obtain expeditiously the fair market value of their property and go elsewhere." 288 N.W.2d at 700. The legislature was responding to the fears of opponents of the HVTL right-of-ways with regard to the potential harmful "effects upon the rural environment and public health." *Id.*

But the statute clearly does not grant the election option to *all landowners* as the language in *Aasand* may imply. The exclusion of owners of real estate used exclusively for growing trees for timber, lumber, wood and wood products clearly arose out of a fear that the owners of vast timberland would abuse the remedy. There is no question that the original amendment which added subdivision 4 to S.F. 896 as it was passed out of the Senate Energy and Housing Committee, excluded "property owned by a railroad or mining company." Tape of Hrg., Senate Energy and Hsg. Comm., April 17, 1977. That language was later replaced by the statutory property classifications of § 273.13 here at issue and there were discussions in the Conference Committee that this change was in response to a concern that undeveloped woodland in northern Minnesota should not be covered by subd. 4 of Minn. Stat. § 116C.63. It is equally clear that the

---

3. Allowing the variability of the individual tax assessor's classifications to be determinative as to the question of which Christmas tree producers could elect a fee-taking would most certainly raise equal protection problems.

4. This is the stated purpose of § 116C.63, subd. 4.

statute was designed to protect farming as defined by the Corporate Farming Act, Minn.Stat. § 500.24, subd. 2(a), to include agricultural products, livestock, milk or fruit or other horticultural products but not timber or forest products. But there is no indication in the hearings that the legislature specifically addressed the question of Christmas tree producers.

Appellant argues that the intensive nature of the cultivation of land to produce Christmas trees is much more analogous to farming than to vast, uncultivated woodlands. Testimony by affidavit was that 65 persons within a year "have been or will be actively engaged on the premises from time to time in the process of raising and harvesting Christmas and nursery stock trees." Most of the work is apparently performed by hand and while not all trees are harvested annually, planting on a rotating basis ensures that different portions of the trees are harvested each year.

Respondent NSP argues that there are substantial differences between farming and Christmas tree production in terms of the amount, frequency and nature of the field work which must be conducted in the direct proximity of the HVTL's. This court does not have sufficient information before it to resolve this controversy and it is irrelevant. The legislature has consistently treated timber production differently than agricultural farming and there is no indication that Christmas tree production was meant to be delineated as anything but "timber."[5] This Court will not rewrite the specific exclusion which the legislature has adopted in Minn.Stat. § 116C.63, subd. 4.

We affirm and remand to the district court for a continuation of the hearings before the Commissioners to determine the amount of damage sustained from the taking of the easement.

PETERSON, J., took no part in the consideration or decision of this case.

5. Appellants do not attack the constitutionality of this distinction and we note that the differences between timber production and agricultural farming are sufficient to meet a rational basis test.