**In re Petition for Disciplinary Action against Kenneth R. PEARSON, Respondent.**

**No. C6–82–671.**

Supreme Court of Minnesota.

Aug. 3, 1984.

Michael J. Hoover, Richard J. Harden, St. Paul, for appellant.

Jack S. Nordby, Minneapolis, for respondent.

PER CURIAM.

The Lawyers Professional Responsibility Board (LPRB) filed a petition for disciplinary action against respondent, Kenneth R. Pearson, alleging ten counts of professional misconduct. The referee appointed by this court found facts supporting only two counts of professional misconduct in violation of the Code of Professional Responsibility [1] and recommended that Pearson be suspended for 2 years but that the suspension be stayed subject to conditions. The

1. The dismissal of eight of the ten counts by the referee is undisputed. We accept the referee's decision.

counts of misconduct involved a fee dispute with one client and a business transaction with another client.

Pearson does not contest the referee's recommendation of stayed suspension. The LPRB, however, ordered and filed a transcript of the hearing pursuant to Rule 14(d), Rules of Lawyers Professional Responsibility, thereby contesting the findings and conclusions. The LPRB argues only that the referee should have made additional findings and conclusions relating to the second count of misconduct.

### Fee Dispute

Pearson represented a client in a marriage dissolution between 1976 and 1978. The client paid Pearson attorney fees and costs totalling $7,972.35. Subsequently, she retained attorney Lester Mikeworth, who commenced an action in Ramsey County District Court seeking a refund of excessive fees. The parties agreed to submit the fee dispute to the Hennepin County Fee Arbitration Board (board), and agreed to be bound by the decision of the arbitrators. The board ordered Pearson to refund $4,472.35, finding that the fee charged was clearly excessive, in violation of DR 2-106(A), Minnesota Code of Professional Responsibility (MCPR).

On advice of counsel, Pearson moved the Hennepin County District Court to set aside the arbitration award. The district court denied Pearson's motion and ordered that judgment be entered against Pearson for $4,472.35, plus 8% interest, and ordered Pearson to pay the client attorney fees of $220 and costs. On appeal, this court affirmed and awarded attorney fees of $400.

On April 3, 1981, Mikeworth demanded payment of the arbitration award. On April 8, Pearson issued a check for $1,000 to Mikeworth. The check was returned for insufficient funds. Evidence was introduced that there were insufficient funds to cover the check on the day it was issued.

On April 28, 1981, Mikeworth filed an ethics complaint with the LPRB concerning Pearson's failure to comply with the arbitration award. Two weeks later, Pearson sent the attorney another $1,000 check, promising to pay the balance the following week. The check was returned for insufficient funds. Pearson explained that there were insufficient funds because one month earlier a $2,500 deposit was reversed because the deposited check was invalid. The only valid payment Pearson made to the client was $1,000 in June 1981.

The ethics complaint was assigned to attorney David Davenport for investigation. In a letter dated June 12, 1981, Davenport requested Pearson's response to the complaint. Pearson replied incorrectly, stating that he had paid $3,000 toward the arbitration award. Pearson testified that when he wrote his response he was not aware that two of the checks had been returned 2 months earlier. Davenport attempted to obtain additional information by several letters and telephone calls. His letters and telephone calls went unanswered, except for one letter from Pearson written over a month after Davenport's request.

Pearson has failed to make further payments to his client and has failed to contact Mikeworth to work out a payment plan despite his promises to do so at a February 1982 panel hearing of the LPRB.

Fee arbitration boards have been established throughout Minnesota to provide an economical and effective resolution of fee disputes between lawyers and their clients. The fee arbitration procedure provides a speedy, procedurally informal method of resolving disputes to the benefit of the client and the lawyer. Participation in the program is voluntary, but a participant agrees to be bound by the decision of the board. Appeal from a binding arbitration decision is limited to the narrow grounds delineated in Minn.Stat. § 572.19, subd. 1 (1982). Minnesota attorneys should be hesitant to appeal a fee arbitration decision, thereby embroiling a client in further litigation, unless there is a genuine argument for vacation of the decision based on the

statutory grounds for appeal.[2] If there is no clear basis for appeal and the board's decision is final and binding, or if an appeal is taken and the arbitration award is affirmed (making it final and binding as occurred in this case), failure to abide by and carry out the decision constitutes professional misconduct warranting discipline.

■■■■ Here the arbitration award has been final and binding for a period of over 3 years. During that time, Pearson has made only one valid $1,000 payment and has failed to make further payments or make arrangements for payment. Pearson's failure to honor and carry out the final decision of the board constitutes professional misconduct warranting discipline.

We hold that Pearson's refusal to honor the fee arbitration award violated Opinion No. 5 of the LPRB and DR 1–102(A)(4)–(6), MCPR. Opinion No. 5 provides:

It is professional misconduct for an attorney who has signed an agreement to arbitrate a fee dispute to refuse to honor and carry out the final decision reached in such proceedings.

In addition, we hold that Pearson's failure to reply to Davenport constituted noncooperation with a disciplinary investigation in violation of DR 1–102(A)(5)–(6), MCPR and our decision in *In re Cartwright*, 282 N.W.2d 548 (Minn.1979).[3]

### Business Transaction

Pearson represented another client in several matters from 1975 through 1977 or 1978. In March 1982, the client sought Pearson's advice regarding a potential investment in apartment buildings. The conversation occurred in Pearson's law office, located in his home. The client told Pearson that he had $15,000 to $20,000 to invest. Pearson advised him against investing in the apartment buildings because of an uncertain economy and the client's lack of need for tax breaks related to real estate investment. The client's sole source of income was $700 per month from social security for a disability.

Pearson suggested that the client could invest in a meat packing business that Pearson was starting. The client did not agree to loan Pearson money at that meeting, but he said that he would think about it and probably would make the loan to Pearson. He indicated that he would want collateral, but Pearson said that he would not provide collateral or security for the loan. It was agreed that when Pearson needed the money, he would telephone the client.

In late April 1982, Pearson made a telephone request to the client for a loan. On May 3, 1982, Pearson executed an unsecured 90-day note promising to repay the client $15,000, with interest of 2% per month. Pearson executed the note individually and as president of Family Freezer Beef, Inc. The client again asked for security for the loan. When Pearson refused, the client did not insist because he had full trust and faith in Pearson. Pearson also promised to reimburse the client for a $321.92 penalty incurred by the withdrawal of a savings certificate. Pearson agreed to

2. The basis for Pearson's motion for vacation in district court and his appeal to this court was that he was not given sufficient time at the arbitration hearing to present evidence. He argued that denial of such opportunity constituted refusal to hear material evidence, a proper ground for vacation of an arbitration award under Minn.Stat. § 572.19, subd. 1(4) (1982). Thus, his appeal was not necessarily unprofessional conduct.

3. In *In re Cartwright*, 282 N.W.2d 548 (Minn. 1979), we considered the sole issue whether repeated refusals to cooperate with disciplinary authorities warranted discipline. Cartwright failed to respond to investigations of complaints being reviewed by several different people over a period of at least 2 years. This court suspended Cartwright for 6 months. After *Cartwright*, we adopted Rule 25, which provides that it is the duty of any lawyer who is the subject of a disciplinary investigation or proceeding to cooperate with the district committee and the LPRB by complying with requests to furnish in writing a full and complete explanation covering the matter under consideration or by furnishing designated papers, documents or tangible objects. Rule 25, adopted October 16, 1981, provides further that violation of the rules is unprofessional conduct and shall constitute a ground for discipline.

provide the client with 100 pounds of steak from the business.

Pearson never disclosed that there was a potential conflict of interest in entering into a loan transaction with a client. He never advised the client to obtain independent legal advice before making the loan.

Pearson represented to the client that the $15,000 would be used for the purchase of meat for the business, but he did not use the loan proceeds for corporate business purposes. On May 5, 1982, Pearson negotiated the $15,000 check and received $5,000 cash, a bank money order in the amount of $7,457.14, a personal money order in the amount of $1,042.86, and a deposit slip for $1,500 to the account of Family Freezer Beef, Inc. Pearson endorsed the personal money order to Knutson Mortgage Company as payment on his home mortgage. On May 21, 1982, he received cash for the $7,457.14 bank money order. Pearson admits that he cannot account for the entire $15,000.

Although the client made repeated telephone demands for payment, Pearson had not repaid any portion of the loan at the time of the hearing before the referee. The referee found that Pearson knew or should have known that the corporation had been recently formed and that its ability to repay the loan was questionable and that Pearson knew or should have known that his own financial difficulties made questionable his ability to repay the client.

In addition to the findings made by the referee, we make the following findings which are supported by clear and convincing evidence. From 1975 to 1978, Pearson represented the client in a dissolution action, in a criminal trespass matter, and in a matter involving disturbing the peace for appearing nude in public. The client was also being treated by a psychiatrist during that time and was taking medication for mental and emotional problems. Pearson was aware of the client's mental illness and the treatment.

Pearson entered into a loan transaction with a client, taking advantage of a vulnerable, trusting person. Pearson's concern was for his own financial interests, not for the financial interests and needs of his client.

We reject Pearson's argument that he was not acting as a lawyer when he discussed and transacted the loan with his client. Pearson met with the client in his law office and gave advice about a potential investment. He had represented the client several times in the past, and the client expected Pearson to exercise his professional judgment to protect his interests. Absent a careful explanation to his client before he discussed the investment that he was not acting as a lawyer, the Code of Professional Responsibility required Pearson to fully disclose the differing interests that existed. Pearson failed to give an explanation or disclosure and thereby engaged in professional misconduct warranting discipline.

■ We hold that Pearson violated DR 5–104(A) and DR 5–101(A), MCPR by entering into a business transaction with a client without disclosing conflicting and/or differing interests and that he violated DR 5–101(A), MCPR insofar as he acted on behalf of Family Freezer Beef, Inc. in protecting the corporation's legal interests over his client's interests.

*Sanction*

■ Although we place great weight upon the referee's recommendation, the final responsibility for determining appropriate discipline rests solely with this court. *In re Daly*, 291 Minn. 488, 490, 189 N.W.2d 176, 179 (1971). To determine the discipline, we weigh the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the harm to the public, and the harm to the legal professional. *In re Agnew*, 311 N.W.2d 869, 872 (Minn. 1981).

■ The referee's recommendation was based upon his opinion that "most if not all of [Pearson's] problems [involve] the lack of adequate finances." Our review of the evidence leads us to a different conclu-

sion. Pearson's misconduct was not simply failure to satisfy debts because of financial difficulty. He failed to attempt to establish a payment plan, however modest, for the arbitration award. He did not cooperate with the disciplinary investigation. He disregarded the interests of a trusting client and borrowed money from his client which he made no effort to repay. Finally, what is most disturbing is the complete absence of a willingness to admit that he has harmed his clients and failed to comply with the professional standards set forth by the Code of Professional Responsibility.

Respondent, Kenneth R. Pearson, is hereby indefinitely suspended from the practice of law with the right to apply to this court for readmission after a period of 2 years from the date of this opinion, subject to the following conditions:

1. repayment of the $15,000 loan with interest [4] and payment of the arbitration award, with proof of payment satisfactory to the LPRB, within the 2-year period, and

2. successful completion of the Multistate Professional Responsibility Examination.

---

**4.** The 90-day promissory note executed by Pearson provided that he would pay interest at the rate of 2% per month. This rate of interest is greater than permitted by Minn.Stat. § 334.011 (1982). For a loan to be usurious, the lender must have an unlawful intent at the time of making the loan. *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 69, 93 N.W.2d 690, 695 (1959). Under the unique circumstances of this case, it is clear, as a matter of law, that Pearson's client did not have an unlawful intent at the time the loan was transacted. The state law evinces a public policy limit, however, on rate of interest that can be charged on this loan. Therefore, Pearson must repay his client $15,-000 plus the legal rate of interest from the date of the loan to the date of repayment. As of May 3, 1982, the date of the loan, the discount rate on 90-day commercial paper was 12% APR. Thus, pursuant to section 334.011, the legal rate of interest payable by Pearson is 16½% APR.