**In re ADMONITION ISSUED IN PANEL FILE NO. 99–42.**

No. C6–00–623.

Supreme Court of Minnesota.

Jan. 25, 2001.

Allen I. Saeks, Leonard, Street and Deinard, Minneapolis, for appellant.

Edward J. Cleary, Director, Martin A. Cole, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for respondent.

## OPINION

PER CURIAM

This appeal arises because appellant challenges a private admonition issued by the Director of the Office of Lawyers Professional Responsibility. The Director ad-

monished appellant for violating Minn. R. Prof. Conduct 5.3(c) and Lawyers Professional Responsibility Board ("Board") Opinion 13 by allowing a nonlawyer in his firm to withhold a deposition transcript from a client until the client reimbursed the firm for the transcript's expense. A Board Panel affirmed the admonition, and appellant appealed to this court.

After reviewing the parties' briefs, this court noted that Rule 5.3(c) does not state an independent ground for disciplining an attorney and that the parties did not discuss whether it was proper for the Director to admonish appellant solely for violating Opinion 13. Consequently, we issued an order asking the parties to address by supplemental brief "whether an attorney may be disciplined based solely on a violation of an Opinion of the Lawyers Professional Responsibility Board." We now answer this question in the negative and reverse.

The facts of this case are undisputed. Appellant was admitted to practice law in 1988 and has no prior disciplinary record. Beginning in May 1996, appellant represented a client in a dispute with the Minnesota Department of Revenue. When the client terminated appellant's representation and obtained new counsel in September 1997, the client owed appellant approximately $9,000 in legal fees and $740.86 in costs, including $445.80 for a deposition transcript. Because the client disputed the amount owed, appellant gave the client's file to a nonlawyer "credit specialist" in his firm for the purpose of seeking payment from the client.

Appellant furnished the client with various documents and information from the file throughout 1998 even though the disputed legal fees and costs remained unpaid. In January 1999, the client sent appellant two facsimile requests for a deposition transcript that he needed to resolve his ongoing dispute with the Department of Revenue. Because the client still had neither paid his legal bill nor reimbursed appellant's firm for the cost of the deposition transcript, appellant forwarded the client's requests to the credit specialist.

The credit specialist informed appellant that the law firm was not compelled to provide the transcript because the client had not reimbursed the firm for its cost. Appellant accepted this recommendation, and the credit specialist notified the client that the transcript would not be released until the firm was reimbursed for its $445 cost.

The client then filed a complaint with the Board, claiming that appellant wrongfully withheld the transcript. In a letter dated January 21, 1999, the Board notified appellant of the complaint and told him that his failure to provide the transcript was a possible violation of Board Opinions 11 and 13. Appellant received this notice on Friday, January 22, 1999. Appellant and the credit specialist met with internal legal counsel at appellant's firm on the following Monday and sent the transcript to the client that afternoon.

After investigating the complaint, a panel of the district ethics committee recommended that appellant be privately admonished for violating Opinion 13 and Minn. R. Prof. Conduct 5.3(c). The Director agreed with the recommendation and issued the private admonition. Appellant then sought de novo review of his admonition by a panel of the Board pursuant to Rules 8(d)(2)(iii) and 8(e), Rules on Lawyers Professional Responsibility (RLPR). On appeal, appellant acknowledged his responsibility for the credit specialist's actions but argued that neither he nor his credit specialist violated Opinion 13 by withholding the transcript.

The Panel affirmed the admonition. Although only Opinion 13 and Minn. R. Prof. Conduct 5.3(c) formed the bases for the admonition, the Panel's memorandum explained that Opinion 13 and Minn. R. Prof. Conduct 1.16(d), taken together, define deposition transcripts as client papers that must be returned to the client at the end

of the representation regardless of whether the client paid for them.[1] The Panel further concluded that appellant's argument was "clearly inconsistent with the spirit of Rule 1.16(d) and Opinion 13, and the tenor found in other Opinions, most notably Opinions 11 and 14, which also relate to liens on client property." Appellant appealed to this court pursuant to Rule 9(m), RLPR.

As a threshold matter, we must determine the force and effect of opinions of the Board and whether an attorney may be disciplined solely for violating such opinions. Although appellant was admonished for violating Minn. R. Prof. Conduct 5.3(c) as well as Opinion 13, Rule 5.3(c) merely sets forth the conditions under which a lawyer is responsible for a nonlawyer's violation of the Minnesota Rules of Professional Conduct, and provides no independent substantive basis for disciplining an attorney.[2] In addition, although the Board Panel and the parties both recognize that Opinion 13 was designed to interpret Rule 1.16(d), neither the Director nor the Board Panel cited Rule 1.16(d) as a foundation for appellant's admonition. Opinion 13 therefore provides the only ground for the admonition. Because appellant was admonished solely for violating a Board opinion and Board opinions do not have the force and effect of our rules, we reverse the Board Panel's affirmance of the admonition.

Rule 4(c), RLPR allows the Board to, "from time to time, issue opinions on questions of professional conduct." Rule 4(c) is the only court rule that references the Board's authority to issue opinions; thus, no rule explicitly explains the force and effect of Board opinions or whether an attorney may be disciplined solely for violating an opinion. Nonetheless, the Director asserts that his office has always maintained the authority to enforce Board opinions and rules of professional conduct by admonishing attorneys for violating either one.

The Director first relies on Board Opinion 1 as a source of this authority. According to Opinion 1:

It is the policy of the State Board of Professional Responsibility to issue, from time to time, advisory opinions as to the professional conduct of lawyers, whether as a result of a specific request or its own initiative, on matters deemed important by the Board.

The Board considers these opinions to be guidelines for the conduct of lawyers in the State of Minnesota. Failure to comply with the standards set forth in these opinions may subject the lawyer to discipline. *See, e.g., In re Pearson,* 352 N.W.2d 415 (Minn.1984).

Even though Opinion 1 notifies attorneys that failure to comply with Board

---

1. Minnesota Rule of Professional Conduct 1.16(d) states in relevant part that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as * * * surrendering papers and property to which the client is entitled." Opinion 13 defines "client files, papers and property" to include unpaid deposition transcripts, but does not explicitly state that a client is unconditionally entitled to his or her files, papers, and property under Rule 1.16(d). Rather, Opinion 13 states that "[a] lawyer may not condition the return of client files, papers and property on payment of copying costs. Nor may the lawyer condition return of client files, papers or property upon payment of the lawyer's fee."

2. Minnesota Rule of Professional Conduct 5.3(c) states:

A lawyer shall be responsible for conduct of [a nonlawyer employed by or associated with the lawyer] that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

opinions *may* result in discipline, the opinion only states the Board's authority to issue *advisory* opinions and to set *guidelines* for attorney conduct on matters the Board deems important. It does not give attorneys definitive notice that Board opinions are binding. Furthermore, even if we interpreted the words "may," "advisory," and "guidelines" to mean "shall" and "binding," Opinion 1 was, like all Board opinions, independently adopted by the Board without this court's explicit approval. We are therefore unwilling to base the Director's authority to discipline attorneys for opinion violations on the Board's own opinion.

The Director also argues that this court has disciplined attorneys in a number of cases for at least one count of misconduct that violated only a Board opinion. In *In re Pearson*, this court held that an attorney's refusal to honor a fee arbitration award violated Opinion 5 and multiple rules of professional conduct. 352 N.W.2d 415, 418 (Minn.1984). In *In re Barta*, an attorney was disciplined for, among other things, permitting nonlawyer employees to sign checks from client trust accounts in violation of Opinion 12. 461 N.W.2d 382, 383 (Minn.1990). Although Barta violated several rules of professional conduct relative to client trust accounts, no corresponding rule was cited for the Opinion 12 violations. *See id.* In *In re Nyquist*, this court noted that "[t]he Director alleges three separate counts of misconduct in his petition * * * which describe[ ] violations of one or more rules of professional conduct," but the counts themselves did not expressly cite any rules of professional conduct. 454 N.W.2d 261, 262 (Minn. 1990). One count did, however, cite a violation of a Board opinion. *See id.* In a fourth case, this court accepted a stipulation that an attorney's failure to pay court reporters for transcripts violated former Opinion 7. *See In re Cohen*, 354 N.W.2d 429, 430 (Minn.1984).

The cases on which the Director relies are not persuasive authority for the proposition that this court has disciplined attorneys solely for violating Board opinions. First, this court has never held that an attorney is subject to discipline solely for violating a Board opinion. Second, each of the four cases cited involved multiple acts violating multiple rules of professional conduct, and the basis for discipline in *Pearson, Nyquist,* and *Cohen* was not in question because the attorneys did not dispute that they had committed misconduct. *See Barta,* 461 N.W.2d at 383–85; *Nyquist,* 454 N.W.2d at 262–63; *Cohen,* 354 N.W.2d at 430–31; *Pearson,* 352 N.W.2d at 417–19. In contrast, the instant case involves an attorney who did not stipulate to wrongdoing and faces discipline for a single alleged violation of an opinion. As a result, we have never been directly presented with the question now before us, and neither this court's precedent nor Board Opinion 1 supports the claim that an attorney may be disciplined solely for an opinion violation.

■ We do, however, find some implicit guidance as to the force and effect of Board opinions in the definitions of "unprofessional conduct" and "professional misconduct" set forth in Minnesota's Rules on Lawyers Professional Responsibility and Rules of Professional Conduct. Rules 8(d)(2) and 8(d)(3), RLPR allow an admonition or stipulated probation only where "the Director concludes that a lawyer's conduct was unprofessional." Furthermore, Rules 9(a) and 9(j)(1)(iii), RLPR together require the Director to "prepare charges of unprofessional conduct" where a Board Panel will hear the matter, and require the panel to "state the facts and conclusions constituting unprofessional conduct and issue an admonition" for isolated and nonserious conduct. Although the Rules on Lawyers Professional Responsibility do not define "unprofessional conduct," Minn. R. Prof. Conduct 8.4

states in part that it is "professional misconduct" "for a lawyer to * * * violate or attempt to violate *the Rules of Professional Conduct*" (emphasis added). Rule 8.4 does not include violation of Board opinions in this definition. As used here, we see no difference between "professional misconduct" and "unprofessional conduct." We therefore conclude that violation of a Board opinion does not constitute the "unprofessional conduct" that is a prerequisite for the issuance of an admonition.[3]

 Furthermore, Board opinions, unlike the Rules on Lawyers Professional Responsibility and Rules of Professional Conduct, are neither drafted nor approved by this court. Only this court has authority to adopt rules of professional conduct. *See In re Integration of Bar of Minn.*, 216 Minn. 195, 199, 12 N.W.2d 515, 518 (1943). The court generally adopts its rules only after solicitation of comments, oral arguments, public hearings, and deliberation. In contrast, the Board drafts its opinions on any matter it deems important, but does not seek advice from this court and often does not seek public comment. *See* Opinion No. 1; *cf.* Alice Sherren Brommer, *Ethics Board Listens to Bar, Opts Not to Issue Opinion*, Minn. Law., May 29, 2000, at 1, 11 (stating that, according to the Board chair, the Board's policy is to seek public input "when the regulatory effect of

an opinion may have a disproportionate impact on a particular section of the bar."). Because the important responsibility for the regulation and discipline of attorneys is exclusive to this court, we cannot delegate to the Board the authority to issue opinions that proscribe attorney conduct and therefore become the functional equivalent of rules of professional conduct.

Having established that the Board's position on this matter exceeds the limit of its authority, we still must determine the force and effect of Board opinions. We note that the attorney general and several state boards and agencies issue advisory opinions on a variety of legal and public policy questions. *See, e.g.,* Minn.Stat. §§ 8.05, 8.07 (2000) (stating that the attorney general may issue written opinions on questions of law and public policy); Minn. Stat. § 10A.02, subd. 12(a) (2000) (allowing Campaign Finance and Public Disclosure Board to issue advisory opinions regarding ethics in government); Minn.Stat. § 13.072, subd. 1(a) (2000) (permitting commissioner of the Department of Administration to issue written advisory opinions on questions about public access to government data and other related topics). Although statutory language authorizing the various types of advisory opinions is not identical, a common thread is that the opinions are not binding on courts.[4] *See,*

---

3. The Board's own procedural manual also requires violation of a professional rule to warrant an admonition. In January 1989, the Board adopted a manual designed to promote consistency in panel procedures and explain panel procedures to the public and bar by summarizing how panels handle matters before them. *See* Lawyers Professional Responsibility Board Panel Manual at 1, 2 (2000). The manual states that "[i]n order to issue * * * an admonition, the Panel must conclude that there * * * was a violation of the Rules of Professional Conduct." *Id.* at 53. The manual does not indicate that violation of a Board opinion alone will also warrant such discipline.

4. In some limited and carefully delineated situations, the legislature has by statute ex-

pressly given attorney general opinions the force of law unless and until this court overrules them. *See Northern States Power Co. v. Williams*, 343 N.W.2d 627, 632 (Minn.1984). The few statutes regulating attorney general opinions in areas such as school and tax matters state, for example, that the opinions "shall be decisive until the question involved shall be decided otherwise by a court of competent jurisdiction," or "shall have the force and effect of law unless and until overruled by a decision of * * * a court of competent jurisdiction." Minn.Stat. §§ 8.07, 270.09 (2000). In contrast, this court has never issued a rule stating that a particular Board opinion should have the same force and effect as the Minnesota Rules of Professional Conduct.

e.g., *Billigmeier v. Hennepin County*, 428 N.W.2d 79, 81–82 (Minn.1988) (stating that attorney general opinions are entitled to careful consideration, especially when long-standing, but are not binding on the courts); Minn.Stat. § 13.072, subd. 2 (stating that data practices opinions are entitled to deference, but are not binding). Board opinions should be accorded similar status.

We therefore recognize Board opinions as rule interpretations that guide attorneys' professional conduct even though they are not binding on this court. Pursuant to Rule 4(c), RLPR, Board opinions that interpret pre-existing rules without either effectively creating new rules of professional conduct or exceeding the scope or plain meaning of the rules are entitled to careful consideration. However, an attorney will not be subject to discipline unless there is clear and convincing evidence of conduct that violates the Minnesota Rules of Professional Conduct.

We hold that the Panel erred in basing its admonition on an advisory opinion rather than a rule of professional conduct. There are no other grounds on which to affirm the admonition because Minn. R. Prof. Conduct 5.3(c) does not by itself proscribe any particular conduct and Minn. R. Prof. Conduct 1.16(d) was not an explicit basis for the admonition.[5] For these rea-

sons, the Panel's decision to affirm the admonition is reversed.

Reversed.

---

**5.** Although we do not decide whether Opinion 13 is a proper interpretation of Rule 1.16(d), we have some concerns about whether Opinion 13 exceeds the scope of an advisory opinion. Opinion 13 is apparently intended to define the papers to which Rule 1.16(d) makes a client entitled upon termination of the representation. When the Code of Professional Responsibility was in effect, it required an attorney to give the client "all papers and property to which the client is entitled" when the representation ended. DR 2–110(A)(2), Minn.Code. Prof. Resp. (1985). The 1983 Director of the Office of Lawyers. Professional Responsibility, Michael Hoover, opined that DR 2–110(A)(2) did not entitle a client to deposition transcripts until he or she paid for them. *See* Michael J. Hoover, *What is a*

*Client Entitled to Receive Upon Conclusion of the Representation?*, Bench & Bar of Minn., Nov. 1983, at 34. When this court replaced the Code with the Minnesota Rules of Professional Conduct in 1985, Rule 1.16(d) still required an attorney to "surrender[ ] papers and property to which the client is entitled." Upon the issuance of Opinion 13, however, William Wernz, the 1989 Director, stated that Opinion 13 made clients entitled to all file contents, including unpaid deposition transcripts. *See* William J. Wernz, *Opinion 13: Copying Costs* ..., Bench & Bar of Minn., Aug. 1989, at 11. While not critical to our analysis set forth above, we note that these are opposing interpretations of Rule 1.16(d) based on essentially unchanged language.