COOPERATIVE POWER ASSOCIATION, (by the Board of Directors thereof), Appellant,

United Power Association (by the Board of Directors thereof), Appellant,

v.

Jevon AASAND, et al., Respondents-Below,

Harold E. Larsen and Inez I. Larsen, Respondents,

State of Minnesota, Intervenor.

No. 49732.

Supreme Court of Minnesota.

Jan. 11, 1980.

LeFevere, Lefler, Pearson, O'Brien & Drawz, John E. Drawz and Charles L. Le-Fevere, Minneapolis, for Cooperative Power Assn.

LeVander, Gillen, Miller & Magnuson, Roger C. Miller and Timothy J. Kuntz, South St. Paul, for United Power Assn.

Paul A. Skjervold, Minneapolis, for respondents.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Karen G. Schanfield, Sp. Asst. Atty. Gen., St. Paul, for intervenor State of Minn.

SHERAN, Chief Justice.

This appeal arises from an action by respondents Harold and Inez Larsen to compel appellants Cooperative Power and United Power Associations to condemn a fee interest in land owned by respondents pursuant to Minn.Stat. § 116C.63, subd. 4 (1978). Section 116C.63, subd. 4 provides that when a utility condemns a designated right-of-way of a route, "the property owner shall have the option to require the utility to condemn a fee interest in any amount of contiguous land which he owns * * *." Any such condemnation at the landowner's behest "shall be considered an acquisition for a public purpose and for use in the utility's business * * *." The utility, however, is required to "divest itself completely of all such lands used for farming or capable of being used for farming within five years after the date of acquisition * * *."[1]

---

1. Minn.Stat. § 116C.63, subd. 4 (1978) provides in full:

When property defined as class 3, 3b, 3c, 3cc, 3d, or 3f pursuant to section 273.13 is proposed to be acquired for the construction of a site or route by eminent domain proceedings, the property owner shall have the option to require the utility to condemn a fee interest in any amount of contiguous land which he owns and elects in writing to transfer to the

By order of December 8, 1978, Judge Patrick W. Fitzgerald of the Hennepin County District Court, Fourth Judicial District, ruled in favor of respondents. Appellants appeal to this court from that order. The State of Minnesota intervenes defending the constitutionality of § 116C.63, subd. 4. We affirm the order of the district court and uphold the constitutionality of § 116C.63, subd. 4, as applied in the case at bar.

Under the Minnesota Power Plant Siting Act, 1973 Minn.Laws, ch. 591, of which the statute at issue is a component part, the state has complete authority over site selection of large electric power plants and routing of high voltage transmission lines (HVTL). *See generally* Minn.Stat. § 116C.51–.69. The legislature enacted the Power Plant Siting Act in order "to locate large electric power facilities in an orderly manner compatible with environmental preservation and the efficient use of resources * * *" and to "choose locations that minimize adverse human and environmental impact while insuring continuing electric power system reliability and integrity and insuring that electric energy needs are met and fulfilled in an orderly and timely fashion." Minn.Stat. § 116C.53, subd. 1 (1978).

In 1973, construction of a 1,000 megawat electric generating plant in Underwood, North Dakota, was inaugurated to supply the growing energy needs of 34 rural electric cooperatives. Subsequently, appellants applied to the Minnesota Environmental Quality Board (MEQB) for a permit to construct high voltage transmission lines emanating from that plant. Minn.Stat. § 116C.57, subd. 2 (1978). Following route and corridor proceedings, public information meetings and hearings evidencing broad spectrum citizen participation, the MEQB approved the location of the route and issued the construction permit. This court affirmed the MEQB's deliberations in *No Power Line, Inc. v. Minnesota Environmental Quality Council,* 262 N.W.2d 312 (Minn.1977).

Pursuant to the power of eminent domain delegated to utilities and the judicial determination that the project served a public purpose, appellants began acquiring and condemning easements along the prospective HVTL route. One section of the route, running from a conversion facility located in Wright County, Minnesota, near Delano to the Coon Creek Substation in Coon Rapids, Minnesota, traversed the southern boundary of the farm property of respondents in Hennepin County. Accordingly, on August 1, 1977, appellants filed a petition in condemnation with the clerk of the Hennepin County District Court expressing the intent to possess a 160 foot-wide easement encompassing roughly 13 acres running along the southern edge of respondents' property for the purpose of a HVTL right-of-way.

On September 13, 1977, respondents announced their intention to compel appellants to condemn a fee interest in respondents' entire 149.17 acre farm under Minn. Stat. § 116C.63, subd. 4. Asserting the unconstitutionality of § 116C.63, subd. 4, appellants declined to enlarge the taking to a fee interest in the entire property. Appellants now appeal from an order of the Hennepin County District Court which, although expressing "grave reservations regarding the statute's constitutionality," requires the condemnation of a fee interest in the entire property.

The enactment of § 116C.63, subd. 4 reflects a creative legislative response to a conflict between rural landowners and utili-

---

utility within 60 days after his receipt of the petition filed pursuant to section 117.055. The required acquisition of land contiguous to, but outside the designated right-of-way of a route or the boundary of a site, shall be considered an acquisition for a public purpose and for use in the utility's business, for purposes of chapter 117 and section 500.24, respectively; provided that a utility shall di-

vest itself completely of all such lands used for farming or capable of being used for farming within five years after the date of acquisition, or such land shall be sold at a public sale in the manner prescribed by law for the foreclosure of a mortgage by action. It is undisputed that the property at issue in the appeal falls within the coverage of § 116C.63, subd. 4.

ties concerning HVTL right-of-ways. Opponents of the utilities, resisting further encroachments upon the rural landscape and fearing the effects upon the rural environment and public health, not only challenge the placement and erection of high voltage transmission lines, but question whether the rural community's sacrifice to the commonweal serves a greater social good. The legislature, sensitive to these concerns but perceiving the occasion as demanding the construction of additional power-generating plants and high voltage transmission lines, enacted § 116C.63, subd. 4 in partial response.

Section 116C.63, subd. 4 requires as a condition precedent to the exercise of the power of eminent domain delegated to utilities, the additional purchase from landowners electing under the statute of any property contiguous to easements condemned for the purpose of a HVTL right-of-way. The statute defines such acquisitions to be for a public purpose. In this manner, the legislature affords landowners not wishing to be adjacent to such right-of-ways the opportunity to obtain expeditiously the fair market value of their property and go elsewhere. The statute, in so doing, responds to parties most affected by the operation of high voltage transmission lines; the statute eases the difficulties of relocation by shifting the transaction cost of locating a willing purchaser for the burdened property from landowner to utility.

 The power of eminent domain inheres in the state as an attribute of soverignty. *County of Freeborn v. Bryson,* 297 Minn. 218, 210 N.W.2d 290 (1973). That power may be delegated, but no vested right to acquire property by condemnation is created by virtue of that delegation. *Id.; Western Union Tel. Co. v. Louisville & N. R. R. Co.,* 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437 (1922); *Rochester & L. O. Water Co. v. City of Rochester,* 176 N.Y. 36, 68 N.E. 117 (1903); *see generally* 1 Nichols, *Eminent Domain* § 3.21 (3d rev. ed. 1978).[2] In its discretion, the legislature may impose reasonable conditions upon the exercise of the power and accordingly may modify the terms of any such delegation. 6B *Dun.Dig.* § 3018 (3d rev. ed. 1969). For example, in *County of Freeborn, supra,* this court determined that the legislature in enacting the Minnesota Environmental Rights Act, 1971 Minn.Laws, ch. 952, imposed limitations on the exercise of the power of eminent domain by prohibiting conduct having materially detrimental effects upon the environment. On this basis the court held that where a wildlife marsh and wetlands area would be adversely affected, a county could not condemn property for a public roadway.

 Notwithstanding its ability to constrain the power of condemnation, the legislature may not impose unreasonable restraints rendering the exercise of the delegated power unduly burdensome and fundamentally unfair. Hence, the constitutionality of Minn.Stat. § 116C.63, subd. 4 rests ultimately upon the reasonableness of the condition it imposes upon the exercise of the power of eminent domain; however, a legislative declaration of public purpose is entitled to great deference. *Bolin Lumber Co. v. Chicago & Northwestern Ry. Co.,* 270 Minn. 516, 134 N.W.2d 312 (1965). This court will intervene as an ultimate arbiter

---

**2.** In *Western Union Tel. Co., supra,* pursuant to a statutory grant, petitioner sought to condemn an easement along a railroad right-of-way for the purpose of erecting a telegraph line. Following approval of the condemnation by the trial court and the payment of compensation and damages, but prior to an actual physical taking, the legislature repealed the authorizing statute. The U.S. Supreme Court found that where the legislature had repealed the statute delegating the power of eminent domain, no vested right inhered which would permit petitioner to consummate the taking. As the New York Court of Appeals explained in *Rochester*

*& L. O. Water Co., supra,* only where a delegatee takes such steps preparatory to the exercise of the power of eminent domain so as to constitute substantial reliance, will that power vest. Consistent with this principle, this court has therefore observed that because delegatees of the power of eminent domain do not possess a vested right to acquire property by condemnation, the legislature may modify the terms of a delegation or withdraw it entirely. *County of Freeborn, supra; State v. Severson,* 194 Minn. 644, 646, 261 N.W. 469, 471 (1935). We find that in the case at bar, appellants' efforts did not constitute substantial reliance.

of constitutionality only where a statute is manifestly arbitrary and unreasonable. *Klicker v. State,* 293 Minn. 149, 197 N.W.2d 434 (1972); *Port Authority of the City of St. Paul v. Groppoli,* 295 Minn. 1, 202 N.W.2d 371 (1972).

As written, § 116C.63, subd. 4 is subject to a construction that could produce bizarre and unjustifiable results; landowners could compel commercially unreasonable acquisitions which, in light of the purpose of the statute, would impose an undue burden on utilities. For § 116C.63, subd. 4 to survive review, a requirement of reasonableness must be read into its terms.

Respondents in this action do not seek to convey an unmarketable fragment but the entirety of their 150-acre property. The marketability of the property may not be significantly diminished by the presence of the high voltage transmission line. Presumably, the farm will retain commercial value far in excess of the detriment imposed. By seeking to compel the acquisition of a parcel that is commercially viable, respondents avoid one of the constitutional problems created by the act. Another potential infirmity, however, is the divestiture provision providing that unless a utility rids itself completely of all land acquired under the statute within five years, such lands will be disposed of by means of a mortgage foreclosure sale pursuant to Minn.Stat. § 116C.63, subd. 4 (1978). The constitutionality of the divestiture provision is not before us at this time, and we accordingly do not pass on its constitutionality. We therefore hold pursuant to § 116C.63, subd. 4 that condemnors, utilizing the power of eminent domain to take easements for the purpose of erecting high voltage transmission lines, must acquire fee interests in commercially viable parcels designated by fee owners and situated contiguously to such right-of-ways. In so holding, we alert the legislature to the problems engendered by the current enactment and urge appropriate limitations to the law as now written.

Affirmed.

PETERSON, J., took no part in the consideration or decision of this case.