NORTHERN STATES POWER COM-
PANY (d/b/a Xcel Energy), by its
BOARD OF DIRECTORS; et al., Ap-
pellants,

v.

Roger A. ALECKSON, et al., District
court respondents,

Robert T. Pudas, et al., Respondents,

Brett R. Hanson, et al., Respondents.

No. A11–1116.

Court of Appeals of Minnesota.

Aug. 6, 2012.

Steven J. Quam, John E. Drawz, Rich-
ard D. Snyder, Fredrikson & Byron, P.A.,
Minneapolis, MN, for appellants.

Gerald W. Von Korff, Igor S. Lenzner,
Rinke Noonan, St. Cloud, MN, for respon-
dents Pudas, et al.

Michael C. Rajkowski, Sarah R. Jewell,
Quinlivan & Hughes, P.A., St. Cloud, MN,
for respondents Hanson et al.

Considered and decided by CLEARY, Presiding Judge; STAUBER, Judge; and BJORKMAN, Judge.

## OPINION

STAUBER, Judge.

Appellants challenge a district court's ruling that respondent landowners are entitled to minimum compensation and relocation benefits under chapter 117. Because respondents do not meet the eligibility requirements under the applicable provisions, we reverse.

## FACTS

Appellants Northern States Power Company, et al., commenced a series of condemnation actions in late 2010, seeking to acquire easements across various parcels of land located in Stearns County. The easements are necessary for the construction, operation, and maintenance of 345-kilovolt High Voltage Transmission Lines (HVTL) as part of a project extending between Monticello and St. Cloud.

Respondents Robert and Charlene Pudas, Nancy and Brett Hanson, and John and Jeannie Stich are the owners of the parcels in question. Respondents exercised their option under Minn.Stat. § 216E.12, subd. 4, otherwise known as the "Buy–the–Farm" statute, to require appellants to acquire a fee interest in their entire parcels.[1] By order filed May 18, 2011, the district court ruled that the respondents were entitled to awards of minimum compensation under Minn.Stat. § 117.187 and relocation benefits under Minn.Stat. § 117.52.

Appellants sought discretionary review by this court. Appellants also requested that the district court certify its ruling as important and doubtful pursuant to Minn. R. Civ.App. P. 103.03(i). On August 16, the district court found that the questions were important and doubtful, but denied certification because the order did not deny either a motion to dismiss for failure to state a claim upon which relief could be granted or a motion for summary judgment as required by the rule. We nonetheless accepted review by order filed on August 31. *See* Minn. R. Civ.App. P. 105.01 (stating this court may accept review of an otherwise unappealable order).

## ISSUES

I. Does a landowner become eligible for minimum compensation under Minn. Stat. § 117.187 by making a Buy–the–Farm election under Minn.Stat. § 216E.12, subd. 4?

II. Does a landowner become eligible for relocation benefits under Minn.Stat. § 117.52 by making a Buy–the–Farm election under Minn.Stat. § 216E.12, subd. 4?

## ANALYSIS

■ "The application of statutes ... to undisputed facts is a legal conclusion and is reviewed de novo." *City of Morris v. Sax Invs., Inc.,* 749 N.W.2d 1, 5 (Minn. 2008). A district court's decision regarding the application of a statute to the undisputed facts of a case is therefore not binding on this court. *Davies v. W. Publ'g Co.,* 622 N.W.2d 836, 841 (Minn.App.2001), *review denied* (Minn. May 29, 2001). An appellate court "construe[s] statutes to [a]ffect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 123 (Minn.2007).

---

1. Additional landowners who were parties at the district court did not make "Buy–the–Farm" elections and are therefore not parties to this appeal, as previously determined in an order filed on November 23, 2011.

The Buy–the–Farm statute provides, in relevant part:

When private real property that is an agricultural or nonagricultural homestead, nonhomestead agricultural land, rental residential property, and both commercial and noncommercial seasonal residential recreational property ... is proposed to be acquired for the construction of a site or route for a high-voltage transmission line with a capacity of 200 kilovolts or more by eminent domain proceedings, the fee owner ... shall have the option to require the utility to condemn a fee interest in any amount of contiguous, commercially viable land which the owner or vendee wholly owns ... in undivided fee and elects in writing to transfer to the utility within 60 days after receipt of the notice of the objects of the petition filed pursuant to section 117.055.... The required acquisition of land pursuant to this subdivision shall be considered an acquisition for a public purpose and for use in the utility's business, for purposes of chapter 117 and section 500.24, respectively.... Upon the owner's election made under this subdivision, the easement interest over and adjacent to the lands designated by the owner to be acquired in fee, sought in the condemnation petition for a right-of-way for a high-voltage transmission line with a capacity of 200 kilovolts or more shall automatically be converted into a fee taking.

Minn.Stat. § 216E.12, subd. 4.

The seminal case interpreting the statute is *Coop. Power Ass'n v. Aasand,* 288 N.W.2d 697 (Minn.1980). In *Aasand,* a utility company petitioned to condemn a 160–foot–wide easement running along the southern edge of landowners' property for the purpose of an HVTL right-of-way. 288 N.W.2d at 699. The landowners announced their intention to compel the utility company to condemn a fee interest in the entire parcel under the Buy–the–Farm statute, then codified at section 116C.63, subdivision 4. *Id.* The utility company challenged the constitutionality of the statute, arguing that it imposed an unreasonable burden on the eminent-domain power in violation of the constitutional guarantees of due process. *Id.* at 698. The supreme court held that the statute, while potentially constitutionally lacking in some respects, was constitutional as applied and that "condemnors, utilizing the power of eminent domain to take easements for the purpose of erecting high voltage transmission lines, must acquire fee interests in commercially viable parcels designated by fee owners and situated contiguously to such right-of-ways." *Id.* at 701. In so holding, the court noted that "the statute eases the difficulties of relocation by shifting the transaction cost of locating a willing purchaser for the burdened property from landowner to utility." *Id.* at 700.

Here, appellants do not dispute that the project for which appellants sought the easement is for an HVTL with a capacity of more than 200 kilovolts and that respondents are therefore entitled to make the election articulated in the statute. Rather, the issue before us on appeal is the district court's conclusion that, after making their election under the Buy–the–Farm statute, respondents were entitled to minimum compensation under Minn.Stat. § 117.187 and relocation benefits under Minn.Stat. § 117.52. We address each statute in turn.

## I. Minimum compensation under Minn.Stat. § 117.187

The minimum-compensation statute provides that:

When an owner must relocate, the amount of damages payable, at a minimum, must be sufficient for an owner to

purchase a comparable property in the community and not less than the condemning authority's payment or deposit under section 117.042, to the extent that the damages will not be duplicated in the compensation otherwise awarded to the owner of the property.

Minn.Stat. § 117.187. The district court concluded that the statute applied to owners who make a Buy–the–Farm election because the legislature provided that proceedings for the acquisition of property for the "construction of a route or a site ... shall be conducted in the manner prescribed in chapter 117, except as otherwise specifically provided in this section." Minn.Stat. § 216E.12, subd. 2 (2010). And because nothing in section 216E.12 specifically precluded application of Minn.Stat. § 117.187, the district court concluded that the minimum-compensation statute applied when a landowner made a Buy–the–Farm election.

We agree with the district court that neither the Buy–the–Farm statute nor the minimum-compensation statute explicitly exempts application of the other. But the relevant eligibility requirements of the minimum-compensation statute must still be satisfied. The minimum-compensation statute only applies to landowners who *must* relocate. *See* Minn.Stat. § 645.44, subd. 15a (2010) (" 'Must' is mandatory."). Here, respondents *chose* to make their Buy–the–Farm elections and therefore *chose* to relocate. As such, we conclude that respondents are not landowners who "must relocate," and therefore are not entitled to maintain a claim for minimum compensation under section 117.187.

Respondents argue that they are forced to relocate because they "will no longer hold fee title to their properties." We conclude that this assertion misstates the proper analysis under the statute. Section 216E.12 simply gives landowners who own

parcels that are proposed to be acquired for the construction of an HVTL with a capacity of at least 200 kilovolts a choice: they may choose to stay and accept the compensation for the partial taking, they may choose to sell the post-condemnation parcel on the open market, or they may choose to require the utility company to acquire the parcel through the Buy–the–Farm election. But whatever option the landowner chooses, the fact remains that it is a choice. Adopting respondent's reading of the statute renders the word "must" superfluous, and respondents' argument in support of such a reading is therefore unavailing. *See generally Owens v. Federated Mut. Implement & Hardware Ins. Co.,* 328 N.W.2d 162, 164 (Minn.1983) (citing general principle that statute should be construed as a whole and, whenever possible, no word or phrase should be deemed superfluous).

## II. Relocation benefits under Minn. Stat. § 117.52

■ The Minnesota Uniform Relocation Act (MURA), Minn.Stat. §§ 117.50–.56 (2010), provides in relevant part:

In all acquisitions undertaken by any acquiring authority ... the acquiring authority, as a cost of acquisition, shall provide all relocation assistance services, payments and benefits required by the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970[ ] as amended ... and those regulations adopted pursuant thereto.

Minn.Stat. § 117.52, subd. 1. By incorporating the federal statute, MURA limits its application to a "displaced person." *See* 42 U.S.C. § 4622 (2006) (stating that relocation benefits are available to a displaced person). And MURA expressly adopts the federal definition of a "displaced person." Minn.Stat. § 117.50, subd. 3 (defining "[d]isplaced person" as "any person who

... meets the definition of a displaced person under United States Code, title 42, sections 4601 to 4655, and regulations adopted under those sections").

As such, the threshold inquiry into whether the relocation-benefits statute applies here is whether respondents meet the definition of a "displaced person." Under the federal statute, a "displaced person" is "any person who moves from real property ... as a direct result of a written notice of intent to acquire or the acquisition of such real property in whole or in part for a program or project undertaken" by a qualifying agency. 42 U.S.C. § 4601(6)(A)(i)(I) (2006). Particularly instructive is a federal regulation—adopted under the federal statute and thereby explicitly incorporated into MURA—that specifically exempts "[a] person who is *not required* to relocate permanently as a direct result of a project" from qualifying as a "displaced person" under the statute. 49 C.F.R. § 24.2(a)(9)(ii)(D) (2011) (emphasis added). And when Congress added the "direct result" language into the statute, the conference committee considered circumstances akin to those present here, stating: "In certain cases where a property owner voluntarily agrees to sell his or her property and moves from the property in connection with the sale, the move should not be considered to be permanent displacement as a direct result of the project and that person should not be eligible for relocation assistance under the Act." H.R.Rep. No. 100–27, at 230 (1987) (Conf.Rep.).

As discussed above, respondents were not required to relocate. The transfer of the fee interest in their property to appellants was a result of respondents making an election under section 216E.12. And while respondents had every right to make such an election, their claim that appellants are "forcing" them to move is disingenuous. The fact remains that appellants

sought to condemn only an easement across respondents' properties. Respondents voluntarily decided to make their Buy–the–Farm elections, requiring appellants to acquire the fee interest in their entire parcels. As such, respondents are ineligible for relocation benefits under Minn.Stat. § 117.52.

## DECISION

Because respondents are not landowners who must relocate or displaced persons, the district court erred by concluding that they are eligible for minimum compensation and relocation benefits.

**Reversed.**

CLEARY, Judge (dissenting).

I respectfully dissent from this decision. I would affirm the district court's order, holding that payments of minimum compensation pursuant to Minn.Stat. § 117.187 (2010), and relocation benefits pursuant to Minn.Stat. § 117.52 (2010), apply to proceedings conducted under Minn.Stat. § 216E.12, subd. 4 (2010).

Minn.Stat. § 216E.12, subd. 2 (2010), provides that, "In eminent domain proceedings by a utility for the acquisition of real property proposed for construction of a route or a site, the proceedings shall be conducted in the manner prescribed in chapter 117...." Minn.Stat. § 117.012, subd. 3 (2010), provides exceptions for the application of chapter 117, but those exceptions do not apply to Minn.Stat. § 216E.12. Consequently, chapter 117, specifically section 117.187, providing for minimum compensation, and section 117.52, providing for relocation assistance, apply to eminent domain proceedings conducted under Minn. Stat. § 216E.12, subd. 4.

Appellants argue that respondents are not eligible for minimum compensation or relocation benefits because they chose to exercise their statutory option to require

appellants to condemn a fee interest in their respective parcels of land. In so arguing, appellants ignore the obvious precondition to such an election: an involuntary taking of the private residential property of respondents. None of the respondents were planning to sell and move from their homes prior to appellants' acquisition of permanent easements on their property; easements that effectively encompassed the entire homesteads of several of the parties and jeopardized the residual value of the properties.[2] An election under these circumstances is little more than a Hobson's choice,[3] an acknowledgment that one is being forced off the land in the name of the greater good.

The district court found that Minn.Stat. §§ 216E.12 and 117.187 "are not in conflict with each other" and that the "plain language" of the statutes provided that "public utilities who exercise the power of eminent domain" for the construction of high-voltage transmission lines "must abide by the procedure and remedies in chapter 117." I agree. The majority, however, agrees with appellants and rules that respondents do not meet eligibility requirements for minimum compensation because they are "choosing" to leave their land and transfer fee title of their property. If these were voluntary elections, they were voluntary in name only. In addition to the fact that respondents are effectively being forced off of their land, once respondents exercise their rights under Minn.Stat. § 216E.12, subd. 4, they are at the mercy of the system: the amount of payment for their land and the timing of that payment is judicially determined. Recognition of

the consequences of this dilemma has led the legislature to provide for the payment of minimum compensation to purchase comparable property under Minn.Stat. § 117.187.

The majority applies the same logic to eligibility for relocation benefits under Minn.Stat. § 117.52, reasoning that one cannot be a "displaced person" under the Minnesota Uniform Relocation Act (MURA) if one is "not required" to relocate from the property. Again, recognition of the fact that respondents are essentially being forced off of their land through no fault of their own, are being forced to move from their home even though a comparable replacement dwelling may not yet be available, and must do this even though they do not yet have the proceeds of their equity available to purchase a new home, has resulted in the legislature providing for relocation assistance under Minn.Stat. § 117.52.

The majority concludes that the legislature never intended to provide minimum compensation and relocation assistance to landowners who face eminent domain and the effective taking of their land and who, in recognition of their plight, elect to start over without a high-voltage transmission line scarring their land and jeopardizing what is likely their largest investment. If the legislature intended to side with the utilities over these effectively dispossessed landowners to such an extent, it would have so provided, with specific language excluding landowners who elect to transfer a fee interest in their property from receiving minimum compensation and reloca-

2. As an example, the Pudas home, once screened from Interstate 94 by over 200 evergreen trees and enclosed by mature oaks, would lose most of those trees and be exposed to Interstate 94. That property, 2.6 acres, would then be traversed by a high-voltage power line and tower, and the entire property would be encumbered by a permanent easement for access, maintenance, and repair.

3. A "Hobson's choice" is "[a]n apparently free choice that offers no real alternative." *The American Heritage Dictionary of the English Language* 859 (3d ed.1992).

tion benefits. The legislature did not do so.