**NORTHERN STATES POWER COMPANY (d/b/a Xcel Energy), by its BOARD OF DIRECTORS; et al., Respondents,**

v.

**Roger A. ALECKSON, et al., District court respondents,**

**Robert T. Pudas, et al., Appellants,**

**Brett R. Hanson, et al., Appellants.**

No. A11–1116.

Supreme Court of Minnesota.

May 29, 2013.

Steven J. Quam, John E. Drawz, Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, MN, for respondents.

Gerald W. Von Korff, Keri A. Phillips, Rinke Noonan, St. Cloud, MN, for appellants Robert T. Pudas, et al.

Michael C. Rajkowski, Sarah R. Jewell, Quinlivan & Hughes, P.A., St. Cloud, MN, for appellants Brett R. Hanson, et al.

Phillip R. Krass, Malkerson, Gunn & Martin, LLP, Minneapolis, MN; and Kirk A. Schnitker, Jon W. Morphew, Schnitker Law Office, P.A., Spring Lake Park, MN, for amicus curiae Minnesota Eminent Domain Institute.

Carol A. Overland, Overland Law Office, Red Wing, MN, for amici curiae No-CapX2020, United Citizens Action Network, St. Paul's Lutheran School and Church, and Cannon Falls Landowners.

## OPINION

PAGE, Justice.

This case presents the question of whether property owners who elect to require a utility to condemn their property in fee under Minn.Stat. § 216E.12 (2012) are entitled to minimum compensation under

Minn.Stat. § 117.187 (2012) and relocation assistance under Minn.Stat. § 117.52 (2012). Appellants are landowners who made such an election after respondents Northern States Power Company, et al. (collectively NSP),[1] sought to acquire easements through their property by eminent domain in order to construct a high-voltage electric transmission line. After making this election, appellants requested that NSP provide them with minimum compensation and relocation assistance. NSP subsequently moved the district court for an order clarifying whether such benefits are available to property owners making an election under Minn.Stat. § 216E.12. The district court concluded that such benefits are available. The court of appeals reversed. Because we hold that appellants satisfy the statutory criteria for receiving minimum compensation and relocation assistance and are therefore entitled to such benefits, we reverse.

NSP is among a group of developers of the CapX2020 Project, which involves the construction of four high-voltage transmission lines extending over 700 miles and crossing 21 Minnesota counties. The first phase of the project extends from Monticello, Minnesota, to Fargo, North Dakota, and includes a 28–mile line between Monticello and St. Cloud. NSP's condemnation of certain easements for the construction of the 28–mile line gave rise to the present appeal.

The facts of this case are not in dispute. On July 12, 2010, the Minnesota Public Utilities Commission issued a route permit to NSP for the construction of the section of high-voltage transmission line between Monticello and St. Cloud. The permit required NSP to "utilize the existing high-

way right-of-way to the maximum extent possible." NSP acquired many of the easements required to construct the high-voltage transmission line through negotiations with property owners. NSP acquired some of the easements utilizing quick-take condemnation proceedings pursuant to Minn.Stat. § 117.042 (2012). The easements sought by NSP through quick-take proceedings included easements extending over the property of appellants Robert and Charlene Pudas, Brett and Nancy Hanson, John and Jeannie Stich, and Matthew Enos. Although the easements were such that appellants could continue living in their homes, appellants chose to relocate because, among other reasons, in their view the high-voltage transmission line would significantly change the character of their land.

Appellants subsequently elected to have NSP condemn their entire properties under Minn.Stat. § 216E.12, subd. 4, which gives an owner of property proposed to be acquired through eminent domain for the construction of a high-voltage transmission line the option "to require the utility to condemn a fee interest in any amount of contiguous, commercially viable land." Appellants also sought (1) minimum compensation pursuant to Minn.Stat. § 117.187, which requires the utility to pay damages sufficient for the owner to purchase comparable property in the community, and (2) relocation assistance pursuant to Minn.Stat. § 117.52, which requires certain payments to the owner to cover relocation costs.

NSP moved the district court for an order clarifying whether minimum compensation and relocation assistance are available to landowners who make an

---

1. Respondent utilities include Northern States Power Company, Great River Energy, Allete, Inc., Western Minnesota Municipal Power Agency, and Otter Tail Power Company. For ease of discussion, we will refer to respondents collectively as "NSP" throughout the opinion.

election under Minn.Stat. § 216E.12, subd. 4. The Pudases subsequently moved the court for an order requiring NSP to provide them with minimum compensation and relocation assistance. The remaining appellants joined the Pudases' motion.

The district court issued an order concluding that minimum compensation and relocation assistance apply when homestead owners elect under Minn.Stat. § 216E.12, subd. 4, to require a utility to condemn their property in fee. The district court reasoned that the Legislature did not specifically exclude property owners making an election under Minn.Stat. § 216E.12 from receiving minimum compensation or relocation assistance. Thus, the district court concluded that NSP was required to provide appellants with those benefits. In rendering its decision, the district court did not address whether appellants satisfied the specific statutory requirements for obtaining minimum compensation and relocation assistance. The court of appeals granted NSP's request for discretionary review under Minn. R. Civ. App. P. 105.01.

In a 2–1 decision, the court of appeals reversed, holding that appellants are not eligible for minimum compensation or relocation assistance. *N. States Power Co. v. Aleckson,* 819 N.W.2d 709, 713 (Minn.App. 2012). With respect to minimum compensation, the court of appeals majority explained that such compensation is only available under Minn.Stat. § 117.187 when an owner "must relocate." *N. States Power Co.,* 819 N.W.2d at 712. The court of appeals reasoned that appellants did not meet the requirement of being owners who "must relocate" because they had the option to remain on their property after NSP sought to condemn the easements, but instead chose to expand the condemnation under Minn.Stat. § 216E.12. *N. States Power Co.,* 819 N.W.2d at 712. Similarly,

the court of appeals noted that eligibility for relocation assistance under Minn.Stat. § 117.52 is conditioned on being a "displaced person" under federal law. *N. States Power Co.,* 819 N.W.2d at 713. Relying on a federal regulation that specifically exempts "[a] person who is not required to relocate permanently as a direct result of a project" from the definition of a "displaced person," 49 C.F.R. § 24.2(a)(9)(ii)(D) (2012), the court of appeals concluded that the appellants were not "displaced persons" and were therefore not entitled to relocation assistance. *N. States Power Co.,* 819 N.W.2d at 713.

I.

The issues raised in this appeal are whether minimum compensation under Minn.Stat. § 117.187 and relocation assistance under Minn.Stat. § 117.52 are available to property owners who exercise their rights under Minn.Stat. § 216E.12 to require a utility to condemn their property in fee.

Because appellants' claims to minimum compensation and relocation assistance arise in the context of their elections under Minn.Stat. § 216E.12, a brief overview of that statute is instructive. Minnesota Statutes § 216E.12 was originally enacted in 1977 as an amendment to the Power Plant Siting Act. Act of June 2, 1977, ch. 439, § 17; 1977 Minn. Laws 1188, 1197–98 (codified as amended at Minn.Stat. § 216E.12 (2012)). The statute "reflects a creative legislative response to a conflict between rural landowners and utilities concerning [high-voltage transmission line] right-of-ways." *Coop. Power Ass'n v. Aasand,* 288 N.W.2d 697, 699–700 (Minn. 1980). Indeed, we have described the opposing interests sought to be balanced through the statute:

Opponents of the utilities, resisting further encroachments upon the rural

landscape and fearing the effects upon the rural environment and public health, not only challenge the placement and erection of high voltage transmission lines, but question whether the rural community's sacrifice to the commonweal serves a greater social good. The legislature, sensitive to these concerns but perceiving the occasion as demanding the construction of additional power-generating plants and high voltage transmission lines, enacted [the statute] in partial response.

*Id.* at 700. At its core, Minn.Stat. § 216E.12 provides that when a utility seeks to acquire certain types of real property for the construction of a high-voltage transmission line, the owner of that property has the option to require the utility to condemn a fee interest in the entire parcel. The statute provides:

> When private real property that is an agricultural or nonagricultural homestead, nonhomestead agricultural land, rental residential property, and both commercial and noncommercial seasonal residential recreational property ... is proposed to be acquired for the construction of a site or route for a high-voltage transmission line with a capacity of 200 kilovolts or more by eminent domain proceedings, the fee owner ... *shall have the option to require the utility to condemn a fee interest in any amount of contiguous, commercially viable land which the owner or vendee wholly owns* ... and elects in writing to transfer to the utility within 60 days after receipt of the notice of the objects of the petition filed pursuant to section 117.055.... The required acquisition of land pursuant to this subdivision shall be considered an acquisition for a public purpose and for use in the utility's business, for purposes of chapter 117 and section 500.24, respectively....

Minn.Stat. § 216E.12, subd. 4 (emphasis added). When an owner elects to require the utility to condemn his property in fee, "the easement interest over and adjacent to the lands designated by the owner ... shall automatically be converted into a fee taking." *Id.* The statute further provides that eminent domain proceedings by a utility to acquire real property for the construction of a high-voltage transmission line "shall be conducted in the manner prescribed in chapter 117"—the eminent domain chapter—"except as otherwise specifically provided in this section." *Id.,* subd. 2.

We have said that Minn.Stat. § 216E.12, subd. 4, "eases the difficulties of relocation by shifting the transaction cost of locating a willing purchaser for the burdened property from landowner to utility." *Coop. Power Ass'n,* 288 N.W.2d at 700. Thus, "landowners not wishing to be adjacent to such right-of-ways [have] the opportunity to obtain expeditiously the fair market value of their property and go elsewhere." *Id.*

### A.

Appellants first argue that the court of appeals erred in holding that they are not entitled to minimum compensation under Minn.Stat. § 117.187, which provides:

> When an owner *must relocate,* the amount of damages payable, at a minimum, must be sufficient for an owner to purchase a comparable property in the community and not less than the condemning authority's payment or deposit under section 117.042, to the extent that the damages will not be duplicated in the compensation otherwise awarded to the owner of the property. For the purposes of this section, "owner" is defined as the person or entity that holds fee title to the property.

Minn.Stat. § 117.187 (emphasis added). With respect to appellants' eligibility for minimum compensation, the parties' central dispute is whether appellants satisfy the statutory condition of being owners who "must relocate." Minn.Stat. § 117.187. Specifically, the parties' dispute is about when the determination of whether an owner "must relocate" is made—that is, whether the determination must be made before or after a property owner makes an election under Minn.Stat. § 216E.12, subd. 4. In essence, NSP argues that the determination of whether a property owner is entitled to minimum compensation should occur on the date the condemnation proceedings commence. Under NSP's theory, appellants are not entitled to minimum compensation because when the condemnation proceedings were instituted, appellants were not required to relocate. Put another way, because appellants were not required to relocate until they elected to compel NSP to condemn their properties in fee under Minn.Stat. § 216E.12, subd. 4, which came after the condemnation proceedings commenced, appellants are not entitled to minimum compensation. In contrast, appellants contend that because they were required to relocate *after* making their election, they are owners who "must relocate" under Minn. Stat. § 117.187 and are therefore entitled to minimum compensation.

We have consistently held that courts determine compensation at the time of the taking and not the date the condemnation proceedings commence. *Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 873 (Minn.2010) (explaining that "[t]he consistent rule" the court has articulated is that "compensation [is] determined as of the time of the taking" (citation omitted) (internal quotation marks omitted)); *State v. Pahl,* 257 Minn. 177, 182, 100 N.W.2d 724, 728 (1960) (stating that ordinarily compensation "is determined as of the date of the taking rather than as of the date of the institution of the condemnation proceedings"). Minimum compensation is a form of compensation provided for in Chapter 117. Therefore, consistent with our general rule, entitlement to minimum compensation under Minn.Stat. § 117.187 should be determined as of the time of the taking, not the date on which the condemnor files a petition to commence condemnation proceedings. Moreover, because the determination of whether an owner is entitled to minimum compensation depends on whether the owner is required to relocate, it makes sense that entitlement to minimum compensation will not be determined until the time of the taking because an owner is not required to relocate until that time.

Accordingly, we must determine whether appellants were required to relocate at the time their properties were taken. Because NSP initiated quick-take condemnation proceedings, the time of the takings with respect to appellants' properties was when title to and possession of the property passed to NSP. *See Moorhead Econ. Dev. Auth.,* 789 N.W.2d at 874 (explaining that "the date of the taking" in a quick-take condemnation proceeding is when "the transfer of title and possession" occurs, which is "well before the commissioners file their award"). It is undisputed that by the time title to and possession of appellants' properties passed to NSP, appellants had made their elections under Minn.Stat. § 216E.12, subd. 4, which by operation of the statute, automatically converted the easements sought into fee takings. *See* Minn.Stat. § 216E.12, subd. 4 (explaining that at the time the property owner makes an election, "the easement interest over and adjacent to the lands designated by the owner to be acquired in fee ... shall automatically be converted into a fee taking"). It follows that, at the

time of the takings, NSP took title to and possession of appellants' *entire* properties in fee. Therefore, we conclude that appellants were owners under Minn.Stat. § 117.187 who, at the time the takings occurred, "must relocate." · Accordingly, they are entitled to minimum compensation.

### B.

■ We now turn to the issue of whether appellants are entitled to relocation assistance under Minn.Stat. § 117.52. Under section 117.52, when there is no federal financial participation in a project that requires real property acquisition, a Minnesota acquiring authority must provide the same relocation assistance to a "displaced person" that federal authorities would be required to provide under 42 U.S.C. §§ 4601–55 (2006):

> In all acquisitions undertaken by any acquiring authority . . . in which, due to the lack of federal financial participation, relocation assistance, services, payments and benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 . . . are not available, the acquiring authority, as a cost of acquisition, shall provide all relocation assistance, services, payments and benefits required by the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 . . . and those regulations adopted pursuant thereto.

Minn.Stat. § 117.52, subd. 1. With respect to relocation assistance, the parties' dispute here concerns whether appellants qualify as "displaced persons" under the federal relocation act, which is a prerequisite to receiving certain forms of relocation assistance under Minnesota law. *See* Minn.Stat. § 117.50, subd. 3 (adopting "the definition of a displaced person under United States Code, title 42, sections 4601 to 4655, and regulations adopted under those sections"); *see also* 42 U.S.C. § 4622(a)(1) (2006) (requiring the displacing agency to provide "actual reasonable expenses in moving," among other things, to a "displaced person").

■ The parties' dispute presents a question of statutory interpretation, which we review de novo. *See Am. Nat'l Prop. & Cas. Co. v. Loren,* 597 N.W.2d 291, 292 (Minn.1999). The goal of all statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012). When a statute's language is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.; accord Caldas v. Affordable Granite & Stone, Inc.,* 820 N.W.2d 826, 836 (Minn.2012).

Title 42, section 4601(6)(A)(i), of the United States Code defines a "displaced person," in relevant part, as

> any person who moves from real property . . . as a direct result of a written notice of intent to acquire or the acquisition of such real property in whole or in part for a program or project undertaken by a Federal agency.

42 U.S.C. § 4601(6)(A)(i) (2006). We conclude that this language is unambiguous. Appellants must satisfy the two primary elements of the federal statute in order to be eligible for relocation assistance under Minn.Stat. § 117.52:(1) they must have moved from real property "as a direct result of a written notice of intent to acquire or the acquisition of such real property in whole or in part" and (2) the acquisitions made by NSP with respect to each appellant must have been "for" a program or project undertaken by NSP. 42 U.S.C. § 4601(6)(A)(i)(I). We conclude that appellants satisfy both elements and thus fall squarely within the plain language of 42 U.S.C. § 4601(6)(A)(i)(I).

First, appellants moved from their real property as a direct result of NSP's acquisition of their properties in fee. NSP argues that owners who make an election under Minn.Stat. § 216E.12, subd. 4, do not move as a "direct result" of an acquisition because their choice to make an election is an intervening cause of their move. We find this argument unpersuasive. NSP's interpretation would essentially read an exception into the definition of "displaced person" for those who choose to move even though no such exception exists on the face of the statute. *See Frederick Farms, Inc. v. Cnty. of Olmsted,* 801 N.W.2d 167, 172 (Minn.2011) (refusing to interpret a statute in such a way that would in effect add an exception to a statute); *Genin v.1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn.2001) (explaining that "adding words or meaning to a statute that were intentionally or inadvertently left out" is forbidden). More important, appellants' choice to exercise their rights under Minn.Stat. § 216E.12, subd. 4, was not an intervening event because the elections occurred before NSP acquired their properties in fee, which directly resulted in their relocation.

Second, NSP's acquisition of appellants' property was "for" construction of the CapX2020 Project. NSP argues that it did not acquire appellants' property "for" the CapX2020 Project because the utilities did not need the entire properties for the project. This argument is without merit. The United States Supreme Court has held that the "acquisition must be 'for,' *or intended to further,* a federal program or project" in order to satisfy the definition of a "displaced person." *Alexander v. U.S. Dep't of Hous. & Urban Dev.,* 441 U.S. 39, 63, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1979) (emphasis added). Indeed, the word "for" is defined as "in order to bring about or further" or "so as to secure as a result." *Webster's Third New International Dictio-* *nary* 886 (1976). When an owner makes an election under Minn.Stat. § 216E.12, subd. 4, the utility's subsequent condemnation of contiguous land in fee is *"intended to further"* the project, *see Alexander,* 441 U.S. at 63, 99 S.Ct. 1572 (emphasis added), because the utility cannot make the acquisition "for" the project unless it condemns the additional land, *see* 42 U.S.C. § 4601(6)(A)(i)(I). Therefore, NSP's acquisitions of appellants' properties in fee were "for" the CapX2020 Project.

■ Finally, NSP contends that a federal regulation further defining the term "displaced person" explicitly precludes a person not required to relocate from qualifying as a "displaced person" under the federal relocation act. *See* Minn.Stat. § 117.50, subd. 3 (adopting the definition of a "displaced person" under 42 U.S.C. §§ 4601–55 and the regulations thereunder). Interpretation of a federal regulation is a question of law that we review de novo. *Indep. Sch. Dist. No. 12 v. Minn. Dep't of Educ.,* 788 N.W.2d 907, 912 (Minn. 2010).

The regulation NSP relies on exempts "[a] person who is not required to relocate permanently as a direct result of a project" from qualifying as a "displaced person." 49 C.F.R. § 24.2(a)(9)(ii)(D). NSP argues that, because appellants were "not required" to relocate, they satisfy this exemption and are therefore precluded from receiving relocation assistance. *See id.* We reject NSP's argument for two reasons. First, as discussed, we conclude that appellants were required to relocate at the time their properties were taken. Second, Appendix A to 49 C.F.R. § 24.2(a)(9)(ii)(D) demonstrates that the exemption for a "person who is not required to relocate permanently" is intended to cover only those that are displaced *temporarily:*

[This exemption] recognizes that there are circumstances where the acquisition, rehabilitation or demolition of real property takes place without the intent or necessity that an occupant of the property be *permanently* displaced. Because [persons not required to relocate permanently] are not considered "displaced persons" under this part, great care must be exercised to ensure that they are treated fairly and equitably. For example, if the tenant-occupant of a dwelling will not be displaced, but is required to relocate *temporarily* in connection with the project, the *temporarily occupied housing* must be decent, safe, and sanitary and the tenant must be reimbursed for all reasonable out-of-pocket expenses incurred in connection with the *temporary relocation.... Temporary relocation* should not extend beyond one year before the person is returned to his or her previous unit or location.

49 C.F.R. pt. 24, app. A, subpart A, § 24.2(a)(9)(ii)(D) at 266 (emphasis added). Indeed, the exemption for a "person who is not required to relocate permanently," 49 C.F.R. § 24.2(a)(9)(ii)(D), reflects a common-sense policy that individuals displaced for a short period of time who can return to their dwelling should not be eligible for the full panoply of relocation-assistance benefits. Because appellants are required to relocate permanently, they do not fall within the exemption in 49 C.F.R. § 24.2(a)(9)(ii)(D). Therefore, because we conclude that appellants satisfy the definition of "displaced persons" under 42 U.S.C. § 4601(6)(A)(i)(I) and do not fall within any exemptions to that definition, we hold that appellants are entitled to relocation assistance under Minn.Stat. §§ 117.50–.56.

In summary, we hold that appellants satisfy the condition of being owners who "must relocate" under Minn.Stat. § 117.187 and the definition of "displaced persons" under 42 U.S.C. § 4601(6)(A)(i)(I). Therefore, we reverse the court of appeals decision and hold that appellants are entitled to minimum compensation under Minn.Stat. § 117.187 and relocation assistance under Minn.Stat. §§ 117.50–.56. We remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.