STATE OF MINNESOTA

IN SUPREME COURT

A13-1474

Court of Appeals                                                                                    Gildea, C.J.
                                                                           Took no part, Lillehaug, J.

Great River Energy, et al.,

               Appellants,

vs.                                                                                         Filed: March 4, 2015
                                                                              Office of Appellate Courts

David D. Swedzinski, et al.,

               Respondents.

_____

Steven J. Quam, John E. Drawz, Richard D. Snyder, Patrick D.J. Mahlberg, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for appellants.

Michael C. Rajkowski, Rachael Holthaus, Quinlivan & Hughes, P.A., Saint Cloud, Minnesota for respondents.

Phillip R. Krass, Rachel R. Lorentz, Malkerson Gunn Martin LLP, Minneapolis, Minnesota; and

James R. Dorsey, Stuart T. Alger, Stinson Leonard Street LLP, Minneapolis, Minnesota; and

Kirk A. Schnitker, Schnitker Law Office, P.A., Spring Lake Park, Minnesota, for amicus curiae Minnesota Eminent Domain Institute.

_____

1

S Y L L A B U S

When landowners elected to compel public utilities to purchase their entire parcel of land pursuant to Minn. Stat. § 216E.12, subd. 4 (2014), the district court did not err in limiting its analysis of the election to the requirements of the statute.

Affirmed.

O P I N I O N

GILDEA, Chief Justice.

The question presented in this case is whether the district court, when approving a landowner's election to require a public utility to condemn a parcel of property in fee under Minn. Stat. § 216E.12, subd. 4 (2014) ("Buy-the-Farm statute"), must consider factors other than those identified in the statute. Respondents Dale and Janet Tauer made such an election after appellants, Great River Energy and several other public utilities, sought to condemn an 8.86-acre easement across their property. The public utilities challenged the election, arguing that the district court must consider several factors in addition to the statute's requirements, including the size of the election. The district court declined to consider the size of the election and limited its analysis to the requirements of the statute. The court of appeals affirmed. Because the language of the statute forecloses consideration of the factors proffered by appellants, and our case law does not require an extra-statutory analysis, we affirm.

Appellants Great River Energy, et al. (collectively "Great River")[1] are public utilities participating in the CapX2020 project. The project involves the installation of a high-voltage transmission line running from Brookings, South Dakota to Hampton, Minnesota. As part of the project, Great River sought to obtain easements across multiple parcels of land in Minnesota pursuant to Minn. Stat. § 216E.12 (2014), which gives public utilities eminent domain power to acquire the right to use land for high-voltage transmission lines. Respondents Dale and Janet Tauer own one of the affected parcels, a 218.85-acre plot that the Tauers have leased to a third party for farming over the past few years.

In 2012, Great River notified the Tauers of its intention to condemn a permanent 8.86-acre easement through the Tauers' property for a high-voltage transmission line, in addition to a 3.38-acre temporary-access easement. *See* Minn. Stat. § 216E.12, subd. 1 (giving utilities the power to condemn land for the purpose of expanding or modifying high-voltage transmission lines). The Tauers elected to compel Great River to purchase their entire parcel of land pursuant to the Buy-the-Farm statute. *See* Minn. Stat. § 216E.12, subd. 4 (giving landowners subject to a condemnation proceeding the option to compel the utility to condemn a fee interest in the landowners' entire parcel of contiguous, commercially viable land).

---

[1] Appellant utilities include Great River Energy, Northern States Power Co., Western Minnesota Municipal Power Agency, Otter Tail Power Co., and Central Minnesota Municipal Power Agency. For ease of discussion, we will refer to appellants collectively as "Great River" throughout the opinion.

Great River challenged the Tauers' election, arguing it was not reasonable, in part because the land subject to the election was so much larger than the land needed for the easement. Great River cited our decisions in *Cooperative Power Ass'n v. Aasand*, 288 N.W.2d 697 (Minn. 1980), and *Northern States Power Co. v. Williams*, 343 N.W.2d 627 (Minn. 1984), to argue that the district court, when approving an election under Minn. Stat. § 216E.12, subd. 4, must consider factors in addition to the factors listed in the Buy-the-Farm statute, including the election's overall reasonableness. Great River specifically relied on our discussion in *Aasand* of a "requirement of reasonableness" as applied to a previous version of the Buy-the-Farm statute. 288 N.W.2d at 701.

The district court rejected Great River's argument and held that *Aasand* did not require an analysis of factors outside of the provisions in the current Buy-the-Farm statute. The court then approved the election and required Great River to purchase all of the Tauers' farm.

Great River appealed, and the court of appeals affirmed. The court of appeals held that the district court's consideration of the election's reasonableness referred only to the elected property's commercial viability. *Great River Energy v. Swedzinski*, No. A13-1474, 2014 WL 1272381, at *3 (Minn. App. Mar. 31, 2014). The court of appeals further concluded that no case law supports Great River's argument that the district court should have considered the size of the election in relation to the size of the easement. *Id.* at *4. We granted review.

4

I.

This case requires us to interpret the Buy-the-Farm statute. This statute provides, in relevant part:

> When private real property that is an agricultural or nonagricultural homestead, nonhomestead agricultural land, rental residential property, and both commercial and noncommercial seasonal residential recreational property, as those terms are defined in section 273.13 is proposed to be acquired for the construction of a site or route for a high-voltage transmission line with a capacity of 200 kilovolts or more by eminent domain proceedings, the owner shall have the option to require the utility to condemn a fee interest in any amount of contiguous, commercially viable land which the owner wholly owns in undivided fee and elects in writing to transfer to the utility within 60 days after receipt of the notice of the objects of the petition filed pursuant to section 117.055.

Minn. Stat. § 216E.12, subd. 4.

The interpretation of a statute is a matter we review de novo. *Christianson v. Henke*, 831 N.W.2d 532, 535 (Minn. 2013). When a statute is unambiguous, we must apply its plain meaning. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). And we cannot add words to a statute "that [the Legislature] intentionally or inadvertently left out." *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001).

Great River does not dispute that the Tauers' election meets the requirements of the Buy-the-Farm statute as written, does not argue that the language of the statute is ambiguous, and does not challenge the constitutionality of the statute. Great River also does not contend that a compelled acquisition of the Tauers' land constitutes an unconstitutional taking or that Minn. Stat. § 216E.12, subd. 4, violates its right to due process. Instead, Great River argues that the district court should have performed a

5

totality-of-the-circumstances reasonableness analysis before approving the Tauers' election. Great River's proffered reasonableness factors, however, are not included in the statute.

Rather than examining the reasonableness of the landowner's election, the Buy-the-Farm statute requires that the landowner "wholly own[]" an "undivided fee" interest in the land at issue in the election. Minn. Stat. § 216E.12, subd. 4. The statute also requires that the landowner give timely written notice of the election. *Id.* The land at issue in the election must be "contiguous" to the land the utility seeks to condemn. *Id.* Finally, the land must be "commercially viable." *Id.* The district court concluded that all of these requirements were met, and Great River does not contend otherwise.[2]

Great River does contend, however, that the district court should have considered the size of the election in comparison to the amount of land needed for the easement. The statute explicitly forecloses this consideration, as it allows for the election of contiguous, commercially viable land "*in any amount*." *Id.* (emphasis added). Great River also argues that the district court should have considered whether the landowner lives on the land subject to the easement. Again, the statute plainly does not allow for this consideration, as the list of eligible types of property includes "*nonhomestead* agricultural land." *Id.* (emphasis added).

---

[2]     Because Great River does not challenge the district court's conclusion that the specific statutory requirements are satisfied, we have no occasion in this case to further interpret those specific requirements, including the requirement of commercial viability.

6

The district court analyzed all factors identified by the Legislature: the type of land, the property's commercial viability, and whether the parcel is contiguous. The plain language of the statute, therefore, forecloses Great River's assertion that the district court should have engaged in a totality-of-the-circumstances analysis of the reasonableness of the Tauers' election.

## II.

Great River nevertheless argues that our holdings in *Cooperative Power Ass'n v. Aasand*, 288 N.W.2d 697 (Minn. 1980), and *Northern States Power Co. v. Williams*, 343 N.W.2d 627 (Minn. 1984) have added a requirement of reasonableness to the statute. *See Wynkoop v. Carpenter*, 574 N.W.2d 422, 425 (Minn. 1998) (stating that once we interpret a statute, that interpretation becomes a part of the statutory text). Great River argues that because Minn. Stat. § 216E.12, subd. 4, as written does not necessarily satisfy the requirement of reasonableness that we discussed in our cases, the district court erred in not looking beyond the statutory requirements when it approved the Tauers' election. Our holdings in *Aasand* and *Williams* do not support Great River's contention.

### A.

We look first at our decision in *Aasand*, 288 N.W.2d 697. In *Aasand*, the landowners elected to compel public utilities to purchase their entire 149.17-acre parcel, after the utilities sought a 13-acre easement for a new high-voltage transmission line route. *Id.* at 699. The utilities brought a facial constitutional challenge to the statute. *Id.* We determined that the constitutionality of the 1978 version of the Buy-the-Farm statute "rests ultimately upon the reasonableness of the condition it imposes upon the exercise of

7

the power of eminent domain." *Id.* at 700. Without a reasonableness requirement, we said that the statute could "produce bizarre and unjustifiable results; landowners could compel commercially unreasonable acquisitions which, in light of the purpose of the statute, would impose an undue burden on utilities." *Id.* at 701. We did not define "reasonableness," but concluded that because the proposed election was commercially viable, the election was reasonable and the utilities were required to purchase the land. *Id.* at 701.

Great River argues that our holding in *Aasand* requires courts to conduct a totality-of-the-circumstances analysis considering all factors that may be relevant to the reasonableness of the election, including the size of the election in relation to the size of the easement, whether the easement would displace the owner, and whether the election includes "unwanted investment land." We disagree.

The statute at issue in *Aasand* was different from the current Buy-the-Farm statute in two important ways. First, the previous statute did not require that the land subject to the compelled acquisition be commercially viable. *See* Minn. Stat. § 116C.63, subd. 4 (1978). In addition, the statute required the utility to "divest itself completely of all such lands used for farming or capable of being used for farming within five years" of the acquisition, or the land would be sold at a foreclosure sale. *Id.* The lack of a commercial viability requirement and the divestiture provision, which we noted was a "potential infirmity," were the problems we specifically identified in *Aasand*, 288 N.W.2d at 701. Amendments to the Buy-the-Farm statute have since resolved both issues. *See* Act of Apr. 24, 1980, ch. 614, § 87, 1980 Minn. Laws 1436, 1486 (codified as amended at

Minn. Stat. § 216E.12, subd. 4 (2014)) (requiring elected land to be commercially viable and requiring divestiture only when the utility can receive market value for the land).

Although we read a requirement of reasonableness into the prior version of the Buy-the-Farm statute, our reasonableness inquiry in *Aasand* was limited to a consideration of the commercial viability of the elected land. *See Aasand*, 288 N.W.2d at 699-701. Moreover, despite the elected parcel's size difference from that of the easement, we approved the election.[3] *Id.* at 701. Our opinion in *Aasand*, therefore, did not impose a totality-of-the-circumstances reasonableness requirement. We instead held that an elected parcel must be commercially viable. The Legislature has since adopted the requirement of commercial viability in the express language of the Buy-the-Farm statute. *See* Minn. Stat. § 216E.12, subd. 4.

B.

We turn now to our opinion in *Williams*, 343 N.W.2d 627, which is the other case mentioning a reasonableness requirement within the context of the Buy-the-Farm statute. In *Williams*, we held that a parcel of land, upon which the landowners grew Christmas trees, was not eligible for an election under the Buy-the-Farm statute because the land was properly classified as timber, a classification that is not included in the statute. 343 N.W.2d at 633. In dictum, we noted that "when a total of 387.5 acres worth from $690,000 to $1,700,000 would have to be acquired as a result of the condemnation of an

---

[3] In *Aasand*, we approved the compelled acquisition of 149.17 acres, after the utilities requested an easement across 13 acres. 288 N.W.2d at 699. This is comparable to the Tauers' election of 218.85 acres after Great River requested an easement of 8.86 acres.

easement of 12.69 acres," the election "would not meet the test of reasonableness established in *Aasand*." *Id.* Great River argues that our statement in *Williams* expanded the reasonableness inquiry from *Aasand*, adding factors other than commercial viability that courts must consider when asked to approve an election, including a comparison of the size of the election to the size of the easement. When viewed in context, however, our holding in *Williams* does not require a totality-of-the-circumstances reasonableness analysis of an election.

Our statement about the size of the parcel in *Williams* was a reference to the statutory exclusion of timber, which reflected the Legislature's concern that landowners would abuse the Buy-the-Farm statute to compel purchases of "vast timberland." 343 N.W.2d at 633. We noted that excluding timber from the statute was "consistent with" the concerns expressed in *Aasand*, which focused on the statute's burden on utilities. *Id.* Our statement in *Williams* recognized that requiring the purchase of large parcels of timberland would impose an undue burden on utilities. We said nothing about the size of the parcel in an election of farmland, and we have no authority to superimpose a size limitation into the language of the statute under the guise of statutory interpretation. *See Frederick Farms, Inc. v. Cnty. of Olmsted*, 801 N.W.2d 167, 172 (Minn. 2011) (stating that courts do not add words to a statute).

In sum, the requirement of reasonableness we applied in *Aasand* was focused on specific concerns with the 1978 Buy-the-Farm statute that the Legislature has since resolved. Our discussion in *Williams* of our *Aasand* reasonableness determination was dicta and does not support the addition of criteria beyond those the Legislature has

10

already provided in the Buy-the-Farm statute. *Aasand* and *Williams* do not support Great River's argument that the district court should have examined factors not included in or inconsistent with the language of the Buy-the-Farm statute before approving the Tauers' election.[4]

## III.

Absent a constitutional challenge, which this case does not present, we are limited to interpreting the plain language of the statute. Great River's proposed interpretation of the Buy-the-Farm statute adds factors to the statute, is inconsistent with the statute's language, and is unsupported by our case law. In approving the election, the district court considered the factors listed in the plain language of the statute; the district court found that the Tauers' land is contiguous, commercially viable, and nonhomestead agricultural land. *See* Minn. Stat. § 216E.12, subd. 4. Great River does not dispute these findings and that ends the inquiry. The policy arguments that Great River advances in support of its theory that the statute should contain additional requirements are properly directed to

---

[4]     In addition to *Aasand* and *Williams*, Great River cites our decision in *Northern States Power Co. v. Aleckson*, 831 N.W.2d 303 (Minn. 2013), to argue that the statute places a significant burden on utilities and therefore needs to be regulated through a reasonableness test. In *Aleckson* we held that landowners exercising their option under the Buy-the-Farm statute were entitled to awards of minimum compensation, Minn. Stat. § 117.187 (2014), and relocation benefits, Minn. Stat. § 117.52 (2014). *Aleckson*, 831 N.W.2d at 311. The Tauers, however, have not requested minimum compensation or relocation assistance; therefore, these concerns are not before us in this case.

11

the Legislature.  Because the Tauers' election meets the statutory requirements, we hold that the district court did not err in approving the compelled purchase of the parcel.

Affirmed.


LILLEHAUG, J., took no part in the consideration or decision of this case.